# CHICAGO, BURLINGTON & QUINCY R. R. CO.
## v.
## CHARLES S. BARTLETT ET AL.

1. CONSTRUCTION OF BOND.—An action on a bond brought by a railroad company against its paymaster and his sureties on the bond where the money in question had been stolen from the paymaster. The condition of the bond was "if the said Bartlett shall well, truly and faithfully perform the duties required of him by said company as paymaster and promptly pay over and promptly account for all moneys belonging to said company which shall be received by him as such agent, and shall deliver over to said company all property of said company when required, then this bond to be void; otherwise to be in full force and effect." *Held*, that the condition of such bond secured the faithful and careful discharge of the duties of paymaster

C., B. & Q. R. R. Co. v. Bartlett.

by Bartlett, but did not constitute him an insurer of the company's funds that came to his hands and did not oblige him to pay over, or account to the company in the sense of paying over, in all events, all such funds; that loss of money by inevitable accident or by theft without any negligence on his part is an excuse.

2. DISTINCTION—PUBLIC FUNDS.—Bonds with conditions similar to the one in question when given by employe to employer will not be construed in such manner as to enlarge by the bond the obligations of the employe beyond the undertakings of the contract of employment. There is a distinction between the construction applied to bonds between private persons and those given by public officers and receivers of public money.

3. NEGLIGENCE.—The court is of opinion that the only ground of recovery in this case is the alleged negligence of the paymaster, and whether he was guilty of negligence such as to render him liable and whether the company or those officers of the company who held the relation of vice-principals to him were guilty of such contributory negligence as would bar a recovery by the company for the money lost, were questions for the jury to determine under proper instructions; that the court below did not commit error in giving or refusing instructions.

4. EVIDENCE—ADMISSION IN LETTER—EXPLANATION.—When a document, such as a letter, not being matter of compact and agreement, is given in evidence as an admission by the adversary, the latter may adduce evidence to show that it originated in mistake or to explain it by circumstances. The explanation of the paymaster as to the letter written by him and introduced in evidence by the company, was admissible.

5. ADMISSIONS.—In considering the weight and conclusiveness to be attached to admissions, it is material to consider whether the admission is made independently and because it is true, or is merely conventional, entered into between the parties from other causes than a consideration of its truth and only as a convenient assumption for the particular purpose in hand.

APPEAL from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding. Opinion filed July 21, 1886.

This action was brought by appellants to recover against appellees on a bond given by Bartlett as principal and the other appellees as sureties. Bartlett was paymaster of the railroad company, and failed to pay over something about twenty-six thousand dollars of the money of the company, which came into his hands. The bond sued on was in the words following:

"Chicago, Burlington and Quincy Railroad Company: Know all men by these presents, that we, Charles Bartlett, as principal, and John G. Shortall, Samuel D. Parker and William

Chisholm, as sureties, are held and firmly bound unto the Chicago, Burlington and Quincy Railroad Company, in the sum of forty thousand dollars, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors and administrators firmly by these presents. The condition of this obligation is such, that if the said Charles S. Bartlett shall well, truly and faithfully perform the duties required of him by said company as paymaster, and promptly pay over and promptly account for all moneys belonging to said company which shall be received by him as such agent, and shall deliver over to said company all property of said company when required, then this bond to be void, otherwise to be in full force and effect.

Witness our hands the sixth day of December, 1882.

"CHARLES S. BARTLETT, Principal.

"JOHN G. SHORTALL,

"SAMUEL G. PARKER,

"WILLIAM CHISHOLM,

"Sureties.

"Approved.    J. C. Peasley, treasurer."

The evidence tended to show that in March, 1884, while Bartlett was paymaster, the sum of $26,850 of the money of the company was stolen from its safe.

For some ten years prior to the making of the bond sued on, Bartlett had been paymaster of the company without bond. He disbursed large sums of money for the company— $500,000 to $550,000 per month, on an average. When Bartlett was not out on the road paying the employes, his duties were performed in the portion of the general office of the company known as the treasurer department. The treasurer department consisted of a paymaster with his assistants, a cashier with his assistants, and a general bookkeeper with his assistant. The cashier, paymaster and bookkeeper occupied one general office, known as the treasurer's room. Connected with this room was a vault some fifteen by twenty feet in size, containing the cashier's safe, and another safe which was double, one compartment being for the use of the paymaster and the other for the bookkeeper. Each compartment was

independent of the other and had a separate lock, and the combination of the lock on Bartlett's compartment was supposed to be known only to himself.  Adjoining the room occupied by the cashier, paymaster and bookkeeper, and known as the treasurer's room, was a large vacant room, access to which was by two doors, one from a gallery surrounding a court in the center of the building, and another which was reached through a passage way, so located that a person entering the room through it would be likely to escape observation from the galleries or the other rooms.  A door from this vacant room led into the treasurer's room, opening at about five feet from the door of the vault in which Bartlett's safe and the other safes were placed.  This door was ordinarily locked with a spring lock, but some weeks before the loss of the money, and while Bartlett was out on a paying trip, the treasurer of the company had the door opened to bring a safe through it into the secretary's room, and the employes were unable to re-lock the door and reported it out of condition, to their superior, the cashier.  After some time the carpenter fixed the door, but it is not positively shown that the door was locked after it was fixed so that it would shut.  Of the fact that the door could not be locked and the repairing by the carpenter, Bartlett was not informed.  The cashier had the keys to all the doors in the treasurer's room, and had the combinations to the paymaster's and bookkeeper's safes written out and inclosed in sealed envelopes, which were kept in the cashier's drawer by order of the company.  The envelope containing Bartlett's combination was found intact after the robbery. It appears from the evidence that it had been the custom of occupants of the treasurer's room, the cashier, paymaster and bookkeeper, for many years and during all the time that Bartlett was paymaster, to leave the safe locks set on the last number of the combination during business hours.  When so set, by a slight turn in the right direction the safe could be easily opened, but by turning the least too far, or turning in the wrong direction, the combination was thrown out and the safe became locked.

It was a custom observed in the office that the treasurer's

room should not be left, during business hours, without some one or more of the employes being present. The going and coming from lunch of the employes was so timed that at least one, and generally two or more, were present at all times. On the day of the larceny, Bartlett placed his money in the safe, and about five minutes before one o'clock went out to lunch. Smith, the cashier, and Maxwell, the assistant bookkeeper, were in the room when Bartlett left. Maxwell went out a few minutes afterward, and the cashier, Smith, remained in the room and did not go to lunch that day. From the cashier's desk, at which he was writing, he could not see the door leading into the vacant room. At about twenty minutes after one o'clock an employe came in and called Smith's attention to the fact that the door into the vacant room was open and that Bartlett's safe was also open. Bartlett was sent for, and on returning to the office found that the money was gone. Bartlett testified that he threw out the combination and locked the safe when he put the money in before going out to lunch, as he knew at that time that he would have no occasion to open the safe again that day. The treasurer of the company and other witnesses testified that Bartlett stated, at different times after the larceny, that he left the safe lock set on the last number; and a letter written by Bartlett was introduced, in which it was claimed that he admitted leaving the safe set on the last number of the combination. Bartlett testified that what he said to the treasurer and others was that he must have left the safe on the last number; that the remark was made in trying to account for the safe being opened in so short a time, but that reflection convinced him that he locked the safe.

There was a judgment for defendant, and the case comes to this court on appeal.

Messrs. STILES & LEWIS, for appellant; as to the construction of the bond, cited Fitzgerald v. Staples, 88 Ill. 234; Kimball v. Custer, 73 Ill. 393; Coey v. Lehman, 79 Ill. 173; Walker v. Tucker, 70 Ill. 527; Bowman v. Long, 89 Ill. 19; McCarty v. Howell, 24 Ill. 341; 1 Chitty on Contracts, 113; Tidens v. Hooper, 5 Exch. 830; Story on Bailments, § 35;

Gray v. Pierson, 6 H. L. 60; Southcote v. Bennett, pt. IV, Coke's R. 83 b; Drake v. White, 117 Mass. 10; Knowles v. Dabney, 105 Mass. 437; Harmony v. Bingham, 12 N. Y. 99; The Harriman, 9 Wall. 161.

The fact that the money was stolen without the paymaster's fault is no defense to the bond: Steele v. Buck, 61 Ill. 343.

It has been frequently adjudicated, in suits on penal bonds, that the loss of money, by theft or otherwise, without the fault of the principal obligor, is no defense to a suit upon his bond, conditioned that he will safely keep, or that he will pay over such money: U. S. v. Prescott, 3 How. 578; U. S. v. Morgan, 11 How. 154; U. S. v. Dashiel, 4 Wall. 182; U. S. v. Kebler, 9 Wall. 83; Boyden v. U. S., 13 Wall. 17; Beavans v. U. S., 13 Wall. 56; U. S. v. Thomas, 15 Wall. 337; State v. Harper, 6 Ohio, 607; Halbert v. State, 22 Ind. 125; Merbeck v. State, 28 Ind. 86; Inglis v. State, 61 Ind. 212; Inhabitants of New Providence v. McEachren, 33 N. J. L. 339; affirmed, 35 N. J. L. 528; State v. Morse, 74 Mo. 413; District Township of Taylor v. Morton, 37 Ia. 550; District Township of Union v. Smith, 38 Ia. 9; Muzzy v. Shattuck, 1 Denio, 233; affirmed, 7 Hill, 584; Commonwealth v. Conly, 3 Pa. St. 372; Co. Com'rs of New Hampshire Co. v. Jones, 18 Minn. 199; County of Redwood v. Tower, 28 Minn. 45; Thompson v. Trustees, 30 Ill. 99; Clay County v. Simonson, 1 Dak. 403; Jefferson Co. v. Linberger, 3 Montana, 231; Boggs v. State, 46 Tex. 10.

Mr. JOHN S. COOPER and Mr. WM. J. HYNES, for appellees; that the obligor was not liable for money of the obligee stolen, lost or destroyed without the fault of the obligor, cited B. & O. R. R. Co. v. Jackson, 33 Albany Law Journal, 239; Walker v. British Guarantee Ass'n, 18 A. & E. N. S. 277; Planters & M. Bk. v. Hill, 1 Stewart (Ala.), 201; Un. Bk. v. Clossey, 10 Johnson, 271; Murfree on Official Bonds, § 464.

MORAN, J.   It is contended by appellants that the conditions of the bond sued on are such as not only to secure the faithful and careful discharge of the duties of paymaster by Bartlett,

but to constitute him an insurer of the company's funds that came to his hands and to oblige him to pay over or account to the company in the sense of paying over, in all events, all such funds; that loss of money by inevitable accident, or by theft without any negligence on his part is no excuse.

In our opinion the construction contended for is not the true construction to be placed upon the bond. The entire obligation is comprehended in the words of the general condition of the bond, i. e., " that Bartlett shall well, truly and faithfully perform the duties required of him by said company as paymaster;" and what follows, to wit, " and promptly pay over and promptly account for all moneys belonging to said company, that shall be received by him as such agent, and shall deliver over to said company all property of said company when required " are but distinct specifications of some chief duties of the paymaster, which serve to enumerate and particularize those duties, but add nothing to the scope of the general condition which covers and comprises those and all other duties which may be required of him as paymaster. He is no more absolutely bound by the terms of the bond to discharge the enumerated or specified duties, than he is duties not specially mentioned, yet covered by the general condition, and that which in its nature would excuse him in the absolute performance of any of the duties covered by the undertaking, will excuse the absolute performance of duties specially mentioned. It appears to be the result of the decided cases, that bonds with conditions similar to the one in question, when given by employe to employer, will not be construed in such a manner as to enlarge by the bond the obligations of the employe beyond the undertakings of the contract of employment. Such bonds are construed as securing the fidelity, honesty, care and diligence of the employe, but not as insuring the employer against destruction of his goods or money while in the employe's control, by inevitable accident, or against spoliation by thieves or robbers, when the employe has been guilty of no negligence. Walker v. British Guarantee Ass'n, 83 Eng. Com. Law, 276; Planters' and Merchants' Bank of Huntsville v. Hill, 1 Stew. (Ala.) 201; Union Bank v. Classey, 10 Johns. 271; B. & O. R. R. Co. v. Jackson, 3 Atlantic Rep. 100.

The case last cited was recently decided by the Supreme Court of Pennsylvania, and is directly in point, the condition of the bond being almost identical in the wording with the condition of the bond in this case, and the money of the company having been stolen while in the hands of the agent. That case serves also to sharply mark the distinction between the construction applied to bonds between private persons and those given by public officers and receivers of public money. In Commonwealth v. Comley, 3 Pa. St. 372, the Supreme Court of Pennsylvania considered the rule as applying to the bond of a public officer, and even though it was offered to be shown that the money was stolen in the night time, without the fault of the collector, the court held that he was bound to pay over the money. The court construes the condition of the bond to be an absolute undertaking to pay over the money collected at all events, saying : " The keepers of the public moneys or their sponsors, are to be held strictly to the contract, for if they were to be let off on shallow pretenses, delinquencies, which are fearfully frequent already, would be incessant."

The condition of the bond in Commonwealth v. Comley, was to " account for and pay over" the moneys to be received, and in the B. & O. Co. v. Jackson, *supra*, the condition was, among other things, that the agent should " account for and pay over the whole " of the moneys received, and the counsel for the company, as appears from the extracts from his argument furnished us in the brief of counsel for appellees, pressed upon the attention of the court the case of Commonwealth v. Comley, and the construction of the condition of the bond in that case, as being decisive of the case against the agent, Jackson, but the court said: " The only ground on which these defendants could be held liable, was the alleged negligence of Jackson."

All the cases cited by coun-el for appellant are actions on the bonds of public officers or receivers of public money, and while it is true, as counsel says, that many of those cases proceed upon the construction given to the condition of the bond, and do not mention the ground of public policy as a reason for construction, yet there can be but little doubt that the fol-

lowing language of the Supreme Court of the United States, U. S. v. Prescott, 3 Howard, 578, supplies the true ground for the strict rule applied: "Public policy requires that every depositary of the public money should be held to a strict accountability. Not only that he should exercise the highest degree of vigilance, but that he should keep safely the moneys which come to his hands. Any relaxation of this condition would open a door to fraud, which might be practiced with impunity."

In our view the only ground of recovery here, is the alleged negligence of Bartlett; and whether Bartlett was guilty of negligence, such as to render him liable, and whether the company or those officers of the company who held the relation of vice principal as to Bartlett, were guilty of such contributory negligence as would bar a recovery by the company for the money lost, were questions for the jury to determine under proper instructions. We have carefully examined the instructions given and refused, and have considered the criticisms of counsel thereon, and are of opinion that the court below correctly stated the law in the instructions given, and committed no error in refusing those asked by appellant and which the court refused to give.

It is urged by appellant that the court erred in permitting Bartlett to answer a question relating to a certain letter written by him to the company. Bartlett testified upon the trial that, to the best of his knowledge, he locked the safe and threw the combination before he left the treasurer's office on the day of the larceny. Appellants introduced in evidence the following letter, as an admission by Bartlett that he left the safe set on the last number of the combination:

"3161 GROVELAND PARK AVENUE,
"CHICAGO, April 14, 1884.

"GENTLEMEN: You have doubtless been made aware through proper channels of the robbery of my safe, and of my dismissal from the company's service immediately thereafter, for carelessness (so claimed) by Mr. Peasley, the treasurer of the company. After hearing the latter's statement of the case, and on consultation with leading bankers here, my bondsmen

think I used ordinary care and caution, by following the common practice of leaving my safe set on the last number of the combination, with the office in charge of two trusted employes of the company, and deem that my seventeen years of service, accounting for nearly one hundred million of dollars, charged to me during that period, is corroborative evidence of faithful care on my part of the funds intrusted to me, inasmuch as the treasurer does not claim that I was in any way implicated in the robbery, but, on the contrary, disavows it. I should be glad to have your board return me my bond, and order the amount stolen (now standing to my debt on the books of the company) credited to me and placed to the debit of such account as you deem proper.

" Most respectfully your servant,

" C. S. Bartlett.

" To the President and Board of Directors of the C., B. & Q. R. R. Co., Boston."

Thereupon Bartlett was recalled, and was, against the objection of plaintiff, allowed to be questioned, and to answer as follows : Q. " I will ask you to explain this sentence; that is to say, what explanation there is to it if there is any. 'After hearing the latter's statement of the case (that is, Mr. Peasley's) and on consultation with leading bankers here, my bondsmen think I used ordinary care and caution, by following the common practice of leaving my safe set on the last number of the combination, with the office in charge of two trusted employes of the company; and taken with my seventeen years of service, accounting for nearly one hundred million of dollars, charged to me during that period, is corroborative evidence of faithful care on my part of the funds intrusted to me.' " A. " It was entirely on their theory. This was written in April. Their theory was that I left the safe open—unlocked, and on their theory and on their ground I wrote that letter, not on my theory at all ; their theory was that the safe was left unlocked, and on that ground the officers, having been in the habit of leaving their safes that way for twenty years, Mr. Smith, with immense sums of money, and I also; and after talking with John DeKoven and other people in this city, Mr. Stubbs, the

treasurer of the Union Rolling Mill, on that ground I wrote it."

" In general," says Starkie, in his work on Evidence, 677, " where a written document is given in evidence as containing an admission by the adversary, parol evidence is admissible to explain it or to show that it originated in mistake." And the same author, on page 719, speaking of an inconclusive admission, says : " And it seems in general when a document, such as a letter, not being matter of compact and agreement, is given in evidence as an admission by the adversary, the latter may adduce evidence to show that it originated in mistake or to explain it by circumstances."

The rule applicable to such evidence was stated as follows, by Cowen, J., in McRea v. Purmont, 16 Wend. 460 : " Whenever a right is vested or created, or extinguished by contract or otherwise, and writing is employed for that purpose, parol testimony is inadmissible to alter or contradict the legal and common sense construction of the instrument ; but any writing which neither by contract, the operation of law, nor otherwise, vests or passes or extinguishes any right, but is only used as evidence of a fact, and not as evidence of a contract or right, may be susceptible of explanation by extrinsic circumstances or facts. Thus, a will, a deed or a covenant in writing, so far as they transfer or are intended to be evidence of rights, can not be contradicted or opposed in their legal construction by facts *aliunde*. But receipts and other writings which only acknowledge the existence of a simple fact, such as the payment of money, for example, may be susceptible of explanation and liable to contradiction by witnesses."

Bartlett's letter was not the basis of any right between the parties, but was competent evidence tending to prove a collateral fact, to wit: that he had left his safe set on the last number of the combination. The apparent admission contained in the letter did not constitute an estoppel, and though, being written and deliberate, it might be entitled to more weight than a verbal admission, yet, like a verbal admission, it was subject to have its importance as evidence affected, and either increased or diminished by consideration of all the facts and circumstances under which it was made. Suppose such

C., B. & Q. R. R. Co. v. Bartlett.

an oral admission was proved, would it not be competent for the party against whom it was introduced to show that while he used the very words of the admission, yet he did so as an assumption, and for the sake of argument, or that he did so deliberately and by the advice of counsel, or to avoid the irritation which a contrary assertion would produce in the negotiation he was carrying on? And if so, why is not the written admission subject to the same explanation? To hold otherwise would be to give to mere evidential statements, on the faith of which no act was done, no condition altered, the same conclusiveness as pertains to admissions that constitute estoppels as between the parties.

In considering the weight and conclusiveness to be attached to admissions, Greenleaf, Vol. 1, Sec. 204, says it is "material to consider whether the admission is made independently, and because it is true, or is merely conventional, entered into between the parties from other causes than a consideration of its truth, and only as a convenient assumption for the particular purpose in hand." The assumption or theory on which such written admission is made, must, then, be competent to be considered by the jury, as well as all other circumstances affecting its weight in determining what importance to attach to it as evidence tending to establish a collateral fact. The answer of Bartlett to the question does no violence to the language of the letter. He does not attempt to add words to or to take words from the writing, nor to distort them from their usual and ordinary sense. The words remain as written, to be weighed by the jury, together with the statement, that in writing that letter to the company asking that his bond be given up, he made his argument in support of his request, assuming the theory which he knew the company held, that he left the safe set on the last number of the combination. This was but the proof of a circumstance of a fact present to his mind when he wrote the words, and competent under the well-settled rule to be considered in connection with the letter. Starkie on Evidence, 719; 2 Wharton on Evidence, 1127; Holsten v. Jumpson, 4 Esp. 189; Reay v. Richardson, C. M. and R. 422; Noble v. Epperley, 6 Ind. 468; Roe v. Day, 7 C. and P. 705; Clifford v. Boezman, 41 Wis. 597; 55 N. Y. 222.

The case of Brant v. Gallup et al., 111 Ill. 487, is relied on by counsel for appellant as showing that the court erred in allowing Bartlett to explain the letter. We do not understand the Supreme Court as establishing any new rule on this point, or as intending to modify the rule as stated by the authorities above cited. In that case, as appears from the opinion, the trial court offered to allow the writer of the letters to testify to all the circumstances under which they were written, but he sought to change the import of the language, by proving that which the court says would be the same as adding to the contents; that is, something more was sought to be done than proving all the circumstances attending the writing of the letters. 'Tis true, the court *arguendo* use language which gives color of support to counsel's contention, but the language of the opinion, in that as in all cases, must be understood with reference to the facts of the case before the court. Upon a review of the whole record, we are of opinion no substantial error appears, and the judgment of the superior court will therefore be affirmed.

Affirmed.