## WILLIAM ELIOT SMITH

### *v.*

## MANNING MAYFIELD.

*Filed at Mt. Vernon November 11, 1896.*

1. WAIVER—*party may waive constitutional or statutory rights in civil cases.* A party for whose benefit a constitutional or statutory right is given may waive such right in civil cases.

2. PRACTICE—*party submitting propositions of law may withdraw them before they are passed upon.* The court may permit a party to withdraw his propositions of law where they have not been passed upon and held as the law of the case, and the opposite party cannot assign such action as error.

3. SAME—*provision of the Practice act as to propositions of law, construed.* Section 41 of the Practice act, (Rev. Stat. 1874, p. 780,) while mandatory as to the duty of the judge in passing upon propositions of law submitted to him, leaves the matter of their submission to the will of the parties.

4. EVIDENCE—*writings which only acknowledge the existence of a simple fact may be explained by parol.* A statement, in a letter introduced as an admission of the defendant's personal liability under the contract sued on, for the amount due the plaintiff may be explained or contradicted, where the letter is no part of the contract.

5. SAME—*proof of the incorporation of a company not necessary to entitle its contract to admission.* It is not error to admit in evidence a contract purporting to be entered into by incorporated companies, though no proof is made of the legality of their organization.

6. APPEALS AND ERRORS—*measure of damages in an action at law not open in the Supreme Court.* The amount of damages sustained by plaintiff in an action at law is a question of fact, upon which the judgment of the Appellate Court is conclusive.

*Smith* v. *Mayfield,* 60 Ill. App. 266, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding.

This is assumpsit, brought in the Madison circuit court by Manning Mayfield, appellee, against William Eliot Smith, appellant, to recover commissions for negotiating the sale of certain street car lines. The declaration,

after stating that the defendant represented to the plaintiff that he was the owner of a certain horse car line extending from the city hall in the city of Alton to the town of Upper Alton, and also of a certain other street car line in said city known as the "Dummy Line," alleges that the defendant "undertook and promised the plaintiff, who was then and there a broker, that if he, the plaintiff, would negotiate the sale of said car lines to one A. M. Farnum, or to a certain syndicate of capitalists who were then and there represented by the said Farnum, and should succeed in consummating a contract for the sale of said car lines to said Farnum for said syndicate, or to any corporation or company organized by him or them or under his or their control, for the sum of $72,000, and in addition thereto the sum of certain costs and expenses of certain improvements, paving tax and other charges against said horse car line which were then unascertained but which were afterwards liquidated, and stated by the defendant to the plaintiff to amount to the sum of $8700, he, the said defendant, in consideration thereof, would pay the plaintiff for his services in conducting such negotiations and in consummating such contract of sale a commission of five per cent upon the price agreed to be paid for said street car lines, to-wit, upon the sum of $80,700, which said commissions would amount, in the aggregate, to a large sum, to-wit, the sum of $4035." The declaration then states the undertaking and promise of the plaintiff, etc., and avers that he, the plaintiff, "entered into negotiations with the said Farnum for the sale of said street car lines, and so successfully conducted the same that they resulted in a contract in writing, whereby a certain corporation known as the Alton Electric Street Railroad Company, and composed of the said A. M. Farnum and the members of said syndicate who were associated with him, was formed and organized under the statute of the State of Illinois in such case made and provided, and thereupon a contract was

made and entered into between it and the duly authorized agents and representatives of the Alton Improvement Association, the corporation which then owned and operated the said 'Dummy Line,' and of the Alton and Upper Alton Horse Railway Company, the corporation which then owned and operated the said horse car line, both of which were then and there under the control of the defendant, who was then and there the owner of a controlling number of the shares of the stock of said companies, whereby the said street car lines were both negotiated and sold, by and through the agency of the plaintiff, acting pursuant to the terms of his employment aforesaid, to the said Alton Electric Street Railroad Company at and for the price and sum of $30,700, under a contract in writing between said last mentioned company and the duly authorized agents and representatives of the said companies which owned and operated said street car lines, the terms and provisions of which said contract were submitted to and accepted and approved by the said defendant prior to the consummation and delivery thereof, by means whereof the said defendant, etc., became liable to pay," etc. The declaration also contains the common money counts. The plea is *non assumpsit.*

The case was tried by the court without the intervention of a jury, and the finding and judgment were in favor of the plaintiff and against the defendant for $4035 damages. One ground of the motion interposed for a new trial was that the damages assessed were excessive in amount, and thereupon the court reduced the judgment to $2835 and overruled the motion for a new trial. The present appeal is from the judgment of affirmance rendered in the Appellate Court.

Everett W. Pattison, and Travous & Warnock, for appellant.

John G. Irwin, for appellee.

1C3–29

Mr. JUSTICE BAKER delivered the opinion of the court:

From the judgment of affirmance in the Appellate Court the law conclusively presumes that in the trial court all questions of fact were properly disposed of and all material allegations of the declaration established by the weight of evidence, and in the absence of rulings of the trial court upon propositions of law submitted to it, the presumption also is that the law was properly applied to the facts of the case. It is, however, by the appellant here, defendant below, assigned as error that the trial court allowed the plaintiff below to withdraw his propositions of law and did not pass on the same.

It is provided in the statute (Practice act, sec. 41,) that when, by agreement of parties, both matters of law and fact are tried by the court, "either party may, within such time as the court may require, submit to the court written propositions to be held as law in the decision of the case, upon which the court shall write 'refused' or 'held,' as he shall be of opinion is the law, or modify the same, to which either party may except as to other opinions of the court." It is to be noted that the statute, while it is mandatory as to the duty of the court, is, as to the actions of the parties to the controversy, permissive, merely. In order to properly dispose of the present contention it is necessary to ascertain just what the court did in the premises.

It appears from the record and bill of exceptions that the case was tried on October 19, 1894, and at the close of the evidence, by agreement and consent of both parties, time was given to each to submit propositions of law, and that thereafter, on October 26, 1894, counsel for plaintiff submitted certain propositions in writing to be held as law in the case, and that on the same day "counsel for defendant, in open court, stated to opposite counsel and the court that the defendant did not desire to submit any propositions of law, whereupon counsel for plaintiff asked leave to withdraw the propositions sub-

mitted by him, and thereupon leave to withdraw them was granted, and the said propositions were never read, considered or passed upon by the court; and thereafter, on a later day of said October term, the court gave judgment for the plaintiff, and assessed his damages at $4035, to which finding and judgment of the court the defendant, by his counsel, at the time excepted."

It is an amply sufficient answer to the assignment of error that defendant did not object or except to the ruling of the court upon the motion of plaintiff to withdraw the propositions that the latter had submitted.   It must be presumed that he fully acquiesced in the action taken by the plaintiff and by the court.   But it is a still better answer that appellant had no right to either object or except.   If the court had in fact passed upon the propositions and had held them to be law applicable in the decision of the case, then a very different question would be presented, and its action in allowing a withdrawal under such circumstances might well be held error.   If appellant desired the ruling of the court upon any questions of law involved in the case, then he should have complied with the requirements of the statute by submitting such propositions as he desired the court to rule upon.   The court neither read nor considered nor passed upon the propositions handed up by appellee, and the latter, upon the announcement of counsel that defendant did not desire to submit propositions, immediately withdrew those he had just offered.  The court owed no duty to appellant in respect to the propositions that were withdrawn, except this : that it should not hold to be law a proposition that was not the law and that was inimical to his rights or interests.   The court did not violate this duty.   The mandate of the statute to write upon a proffered proposition of law either the word "refused" or the word "held" is one that is for the exclusive benefit of the party submitting the proposition, and if such party elects to withdraw such proposition from

the consideration of the court and waive his right to demand that the court should pass upon it, then no one else has a right to complain. It is sound law that a party for whose benefit either a constitutional or statutory right is given may waive such right—at least in a civil case. The assignment of error is without any merit whatever.

It is claimed that the court erred in admitting the testimony of appellee explaining, varying and contradicting the terms of the document of February 27, 1893. We may say by way of premise, that it devolved upon appellee to show, under his declaration, that his contract for commissions was with appellant personally and in his individual capacity, and not with him as the agent of the Alton and Upper Alton Horse Railway Company and Alton Improvement Association,—owners, respectively, of the two street car lines; also, that the commissions were due when the contract of sale to Farnum or the syndicate, or company or corporation, organized by him or them, or under his or their control, was consummated; and also that under the contract his commissions were to be five per cent upon the total price of $80,700. In respect to each of these matters the evidence was conflicting, appellant contending that the liability for commissions under the contract was not personal, and also contending the commissions were not to be paid when the sale was closed but when the full contract price was paid, and then only upon the $72,000 mentioned in the declaration.

Appellee, after testifying that the contract for commissions was personal with appellant, further testified that after the sale was consummated he went to appellant and told him that he would like to have his commissions; that appellant said he was hard up and did not have the money to pay the same; that the $8700 which had been paid by Farnum and his associates had passed into the Alton Savings Bank to the credit of the street paving account, which that bank had cared for; that he, appellee, urged that he was in need of the money, and

appellant said he would write a letter to Hayner, of the Alton Savings Bank, and he thought arrangements could be made by which he, appellee, could get money, and that appellant wrote a letter, and he, appellee, wrote an endorsement on its back, and appellant subscribed thereto his approval.   As corroborative of his claim that the promise and undertaking of appellant were personal, appellee introduced in evidence the said letter, endorsement and approval.   The same are as follows:

"*Mr. J. E. Hayner:*            "ALTON, ILL., *Feb. 27, 1893.*

"*Dear Sir*—As per our talk with Mr. White, I am to pay $3600 as commission or bonus on street railway deal, of which Mr. White said to us Mr. Mayfield was to receive $1200.   The only question between us is, when paid.   My remembrance is distinct this was to be paid from proceeds of note 47,000.   If you can assist Mr. Mayfield in this I shall be glad.

"Yours truly,            WM. ELIOT SMITH."

"STATE OF ILLINOIS, }
    *City of Alton.*   }

"Know all men by these presents, that I hereby authorize J. E. Hayner, or the cashier of the Alton Savings Bank, to collect the amount of $1200 within named from William Eliot Smith, and apply same to the payment of my note of $1000, dated of this day, at eight months' time, bearing seven per cent interest, executed by me to the Alton Savings Bank, and such balance as shall be left over to place to the credit of myself at said Alton Savings Bank.

"Witness my hand and seal this 27th day of February, 1893.

MANNING MAYFIELD.   [Seal.]

"Approved.—WILLIAM ELIOT SMITH.—Feb. 27, 1893."

The record shows that the following then occurred: The witness was asked by plaintiff's counsel this question:   "That letter contains a statement from Mr. Smith that he understood from Mr. White that $1200 was to go to you?"   To which the witness answered, "Yes, sir." The following question was then put to the witness: "Explain that statement; state whether you sanctioned it or not."   This question was objected to by defendant's counsel as incompetent, irrelevant and immaterial, and

as attempting by oral evidence to contradict or explain the terms of a written contract or document. The objection was overruled by the court and defendant was allowed to answer, to which overruling of the court defendant duly excepted. The witness answered as follows: "I will have to state, then, the contract between Farnum and his associates with my business. I was to receive five per cent, and after I received the charter which I obtained for the Alton and Suburban Electric Railway Company I sold this property to Farnum and his associates, and in order to accomplish the sale I made an agreement with Farnum and his associates that two-thirds of the commission, under certain conditions, should be paid to them. That would leave me entitled to collect one-third. It was a conditional arrangement with Mr. Farnum and his associates that a certain portion of that money should go to them—two-thirds of the commissions to them and one-third to me. They were to receive of the $7500 bonus which the citizens subscribed for the North Alton line, four-fifths, and one-fifth was to come to me. That would make $1500 as my portion of the bonus. So the arrangement was that I was to receive twenty per cent of the bonus and one-third of the interest to be paid by Mr. Smith, as also some preferred stock. But I never got anything. White and I never had any conversation about that at all. As they failed to build the road within the specified time they could not collect the bonus, and it was lost. Therefore I claim against Mr. Smith the entire commission, they not performing their part, because I agreed they should have it only on certain conditions."

The letter was not the contract between appellant and appellee. The contract between them was made in 1892, was a verbal contract, and was entirely executory. At the time the letter was written the services the contract provided for had been completely performed, and appellee was seeking to collect his commissions and appellant was expressing an inability to pay. The evident

purpose of the letter was to enable appellee to borrow $1000 from the savings bank, which purpose, by means of the letter and endorsements thereon, was accomplished. That which was done was to enable appellee to use $1200 of his claim against Smith as collateral security in obtaining the loan. The letter was competent evidence for appellee, it being an admission in writing by appellant of his personal liability. But the letter, unexplained, tended to show that appellee was only entitled to receive $1200 of the five per cent commissions. This was owing to the fact that the letter, which used the language of appellant, (not the language of appellee,) incidentally made reference to an independent transaction between appellee and Farnum and his associates, whereby, under certain conditions, two-thirds of the commissions were to be paid to them. It would have worked a rank injustice to have excluded explanatory testimony showing what those conditions were, and that they were not complied with, and that the entire commissions were due and owing to appellee.

In *Brant* v. *Gallup*, 111 Ill. 487, certain letters written by appellant were read in evidence against him, and he offered, in a general way, to testify to the motives which induced him to write the letters in the manner he did, but the evidence was rejected; the trial court holding he might testify to the circumstances under which they were written but not to his intentions or purpose in writing them as he did. This court said (p. 492): "Appellant might, no doubt, as the court below decided he could, have shown the circumstances under which the letters were written, but he had no right to change the fair and reasonable import of the letters by proving a secret and unexpressed intention."

In Starkie on Evidence (p. 677) it is said that where a written document is given in evidence as containing an admission by the adversary, parol evidence is admissible to explain it or to show that it originated in mistake;

and on page 719 it is said that when a document, such as
a letter, not being matter of compact and agreement, is
given in evidence as an admission by the adversary, the
latter may adduce evidence to show that it originated in
mistake or to explain it by circumstances. And see, also,
*McRea* v. *Purmont*, 16 Wend. 460; *Chicago, Burlington and
Quincy Railroad Co.* v. *Bartlett*, 20 Ill. App. 96, and numer-
ous authorities cited in the last named case.

The rule is, that writings which only acknowledge the
existence of a simple fact are susceptible of explanation
and liable to contradiction. If the writer of a letter can
introduce in evidence proof of circumstances explanatory
of statements made therein, surely his adversary, who
has, under the exigencies of the case, produced such
letter for the evidence it affords as to some point in
controversy, may also show circumstances that are ex-
planatory of other statements in the letter that would
be in derogation of his claims. Nor do we think the fact
that the letter, the assignment endorsed thereon, and the
written assent by appellant to such assignment, may,
when taken and considered together, amount to a con-
tract by appellant to pay to the savings bank the $1200
mentioned in the letter, takes away the right of the par-
ties to this controversy to show therein such explanatory
circumstances. The letter, in and of itself, is simply an
admission. The letter, assignment and approval, taken
together, constitute a contract in regard to the specified
$1200, and the evidence admitted did not tend to explain,
change or contradict the terms of that contract.

In 1 Greenleaf on Evidence (sec. 204) it is said that
it is material to consider whether an admission is made
independently and because it is true, or is merely con-
ventional, entered into between the parties from other
causes than a conviction of its truth and only as a con-
venient assumption for the particular purpose in hand.
Here the particular purpose in hand was to enable ap-
pellee to use $1200 of the claim for commissions as a col-

lateral at the bank in obtaining credit to the extent of $1000. As to whether the amount due appellee was more than the $1200 mentioned was wholly immaterial, so far as the transaction with the bank was concerned, and it might well be assumed in that transaction that the indebtedness was $1200.

There was no error in admitting in evidence the explanatory circumstances in question.

It is urged that the court erred in admitting in evidence the articles of agreement dated February 21, 1893, purporting to be made between the Alton Improvement Association and the Alton and Upper Alton Horse Railway and Carrying Company as parties of the first part, and the Alton Electric Street Railway Company as party of the second part. Objection was made to the introduction in evidence of that agreement "on the ground that there was no proof of the incorporation of the companies purporting to be parties to it, nor of the signatures to the document." The objection was overruled by the court and the agreement was admitted in evidence, and the counsel of appellant excepted.

There is abundance of proof in the record that the parties of the first part were going corporations,—*de facto* if not *de jure,*—engaged in the actual transaction of business, one of them operating a horse car line of railroad and the other operating a dummy line. In respect to the Alton Electric Street Railroad Company it may be said that the making of the contract is of itself sufficient proof of the existence of a corporation *de facto* for all the purposes of this case. The legality of the organization of a corporation, when the rights of the public or the rights of third persons are involved, cannot be inquired into in a collateral proceeding, but such legality can be attacked and judicially examined by *quo warranto* only. (*Osborn* v. *People,* 103 Ill. 224; *Trumbo* v. *People,* 75 id. 561.) In the very nature of things it cannot be the law that in every suit brought by one person against another which

involves some transaction had with a corporation, such transaction cannot be shown in evidence without first establishing that the corporation, although not a party to the pending litigation, is a *de jure* corporation. If such were the rule the business of the country, under present conditions, could not be transacted.

It is shown that Charles W. Milnor was president and H. R. Phinney secretary of each of the two corporations named as parties of the first part, and that their respective signatures as such officers of said respective corporations were genuine. A witness also testifies to the signature of A. M. Farnum as president of the Alton Electric Street Railroad Company. Although no witness testifies in direct terms to the signature of J. G. White as secretary of the latter company, yet the evidence shows that a contract was made between the companies named as parties of the first and the company named as party of the second part, and that the contract was reduced to writing. Appellant himself testifies that the agreement was consummated in February, and that the date of the "consummated agreement was February 21." The contract produced bore the date thus indicated. It was attested by the seals of the respective companies. All the signatures to it except that of White, were testified to in positive terms, and the fact that it was also duly signed by him,—the name "J. G. White, secretary," being attached thereto,—is at least *prima facie* established by the facts above stated, and the admission that the agreement of the date of February 21 was "consummated." If it was not duly signed by the necessary officers, how could it have been a "consummated agreement?"

Under the circumstances the court did not err in admitting the agreement as evidence.

Appellant claims in his brief and argument that the contract of February 21, 1893, was *ultra vires* the Alton Electric Railroad Company. But as no propositions of law raising that question or involving in any way the con-

struction or legal effect of the contract were either given or refused, the matter thus sought to be submitted for our decision is not preserved in the record.

It is also suggested that the judgment is excessive, notwithstanding the reduction made by the court at the time the motion for a new trial was overruled. As we have very frequently held, the question of the amount of damages in a case such as this is a question of fact, upon which the judgment of the Appellate Court is final and conclusive.

We find no error to justify a reversal. The judgment is affirmed.