## Cleveland Seed Company, Appellee, v. William Moore et al., Appellants.

1. EVIDENCE—*what answers of witness properly stricken out.* The conclusions of a witness are incompetent and are properly stricken out.

2. EVIDENCE—*when admission of, in rebuttal, not strictly so, not ground for reversal.* It is within the sound judicial discretion of the court to admit or to refuse to admit evidence in rebuttal which is not strictly so in character, and no reversal will follow from the action of the court in the absence of an abuse of such discretion.

3. EVIDENCE—*when explanation of statements contained in letters competent.* A witness may be permitted to explain a statement contained in a letter written by him, where such letter does not form the basis of the action or the defense thereto.

Assumpsit. Appeal from the Circuit Court of Vermilion county; the Hon. M. W. THOMPSON, Judge, presiding. Heard in this court

at the November term, 1907.   Affirmed.   Opinion filed April 21, 1908.

JAMES H. DYER and H. M. STEELY, for appellants.

LINDLEY, PENWELL & LINDLEY, for appellee; W. M. ACTON, of counsel.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This is. an action of assumpsit to recover the purchase price of 140 bushels of seed corn at $4 per bushel and twenty-seven bushels of seed corn at $7 per bushel. To the declaration, which consists of the common counts, defendants filed pleas of the general issue and set-off. The plea of set-off avers that defendants are raisers and canners of sweet corn, and that in the early part of 1903 they employed the Western Seed and Irrigation Company to purchase for them as their agent or broker, 500 bushels of Stowell's Evergreen Seed Corn; that in pursuance of such agency said Western Seed and Irrigation Company contracted with the Cleveland Seed Company, plaintiff, for 500 bushels of seed corn of 85 per cent germinating vitality at $4 per bushel, f. o. b. cars, Rochester, New York, and that in pursuance of such contract the Cleveland Seed Company, on, to-wit, March 5, 1903, furnished and delivered to defendants upon said contract 140 bushels of seed corn, failed, refused and neglected to furnish to defendants the residue of 360 bushels; that seed corn advanced in the market, to-wit, $15 per bushel, and that by reason thereof defendants. sustained loss to the amount of $3,000, etc. A trial by jury in the Circuit Court of Vermilion county resulted in a verdict and judgment in favor of plaintiff and against defendants for $749, being the total amount claimed by plaintiff, and defendants appealed.

The only evidence of the alleged contract for the sale of 500 bushels of seed corn at $4 per bushel by appellee

to the Western Seed and Irrigation Company consists of certain telegrams and letters which it is not necessary to here set out in detail. It is sufficient to say that the several telegrams and letters referred to, were merely propositions and counter-propositions for the purchase and sale of said seed corn, and did not constitute a complete and binding contract therefor between the parties. Neither is there any competent evidence tending to show that the Western Seed and Irrigation Company acted as agent or broker for appellants in the transaction. The fact is that the Western Seed and Irrigation Company was an independent purchaser and seller of seed corn and that as regards the transaction in question it negotiated with appellee for the purchase of 500 bushels of seed corn at $4 per bushel, f. o. b. Rochester, N. Y., which it proposed to sell to appellants at $5 per bushel f. o. b. Hoopeston, Ill. In this state of the case, conceding that a binding contract was entered into between appellee and the Western Seed and Irrigation Company, appellants could not maintain an action thereon as undisclosed principals.

Appellants also attempted to sustain their plea of set-off upon the theory that there was an express ratification or adoption by appellee of the terms of the alleged contract between the Western Seed and Irrigation Company and appellee, whereby appellee becomes bound to appellants. In support of this theory Charles C. Crary, one of appellants, testified that he had an interview with Seth M. Pease, president of appellee, at the office of the latter in Rochester, N. Y., on February 20, 1903; that he then told Pease that the Illinois Canning Company was the principal in the transaction with the Western Seed and Irrigation Company, and that as he had been unable to get any assurance from the latter company as to when shipment of seed corn would be made, he had come to see if he could not arrange for an immediate delivery; that he then had all the correspondence between the parties with him and

offered to show it to Pease, but the latter said he did not want to see it; that Pease said, the contract with the Western Seed and Irrigation Company required the furnishing of seed that tested 85 per cent germination, and he (Pease) had not received any seed from his growers that would germinate that high; that he saw a particular lot of seed on the floor of the warehouse which Pease said had not been tested; that it was a nice looking lot of seed, except that it needed further drying, and that he told Pease he would be willing to waive the question of percentage of germination and accept that particular lot of seed, so far as it would apply on the contract, and that Pease told him he would let him have it at $4 per bushel; that he told Pease that the quality of this particular lot of seed was sufficiently good so that if he would give him 150 bushels of seed corn, equally good, he would waive entirely the guaranty of 85 per cent. germination; that Pease said he had some seed corn yet to come in and did not know what he could do, but would let him know later in regard to it. The particular lot of seed corn referred to measured 140 bushels, and was shipped to and received by appellants. Crary further testified that upon the same occasion be purchased by sample a lot of seed corn consisting of twenty-seven bushels for $7 a bushel, for shipment to C. W. Swain at Wilmington, Ohio. The evidence discloses that the twenty-seven bushels of seed corn was shipped by appellee as directed, but the shipment was refused by the consignee, because upon the bill therefor there appeared printed matter as follows: "While we exercise the greatest care to have all seeds pure and reliable, we do not give any warranty, expressed or implied, and will not be in any way responsible for the crops. If the purchaser does not accept the seeds on these conditions they must be returned at once. T. C. S. Co."

Seth M. Pease testified that when Crary came to Rochester and told him that appellants were to have

the seed corn which the Western Seed and Irrigation Company contracted for, he told Crary that appellees had no contract with the company; that Crary asked him if he (Pease) would let appellants have the seed corn then in the warehouse and which had been examined by them, and that he told Crary that it had not yet been tested, that it was damp and could not be tested for some time, but that appellants could have it for $4 per bushel in its then condition; that Crary said he would take the corn at that price; that he told Crary if any more corn as good as the lot containing 140 bushels came he would let appellants have it, but that no corn of that grade subsequently came in. As to the lot of seed corn containing twenty-seven bushels, Pease testified that Crary fully inspected it before purchasing, and said he would take the lot and take his chances. The testimony of Seth M. Pease is corroborated in the main by the testimony of his son Henry, who was also present upon the occasion in question. We think the jury were fully warranted in finding that the two lots of seed corn containing 140 bushels and twenty-seven bushels, respectively, were purchased by Crary, acting for appellants under an independent contract, without any reference to the alleged contract between appellee and the Western Seed and Irrigation Company, and that there was no ratification or adoption by appellee of such alleged contract.

It is urged that the witness Seth M. Pease was improperly permitted to testify as to certain self-serving memoranda made by him with reference to the sale to appellants of the lot of seed corn containing 140 bushels. We find no such testimony in the record. The witness merely testified that he picked up a contract blank and wrote down an order. The order written by the witness was not admitted in evidence and thus does not disclose what it contained.

Appellants complain because they were not permitted to show the percentage of germination of the 140

bushels of seed corn. Upon their own theory appellants had waived the provision in the alleged contract regarding germinating vitality of the corn, and we do not see the relevancy of the inquiry as to the germinating vitality of the 140 bushels.

The statement by the witness Crary that the 140 bushels of corn delivered on the alleged contract between appellee and the Western Seed and Irrigation Company was merely the conclusion of the witness and was properly excluded. The jury were impaneled and sworn to determine that question.

Whether or not the Western Seed and Irrigation Company acted independently or as agent or broker for appellants in conducting the negotiations with appellee was determinable from the correspondence between the parties, and the court properly excluded parol evidence offered by appellants upon that question. Appellants, however, secured the desired evidence from the witness Emerson.

It is urged that appellee was improperly permitted to introduce certain evidence in rebuttal which was only properly admissible in chief. The propriety of admitting such evidence in rebuttal is within the sound judicial discretion of the trial court, and the exercise of such discretion will not be reviewed on appeal. Hartrich v. Hawes, 212 Ill. 334.

The court did not err in permitting the witness Seth M. Pease to explain a statement in a letter written by him, as president of appellee, to appellants. The letter formed no part of the alleged contract between appellee and the Western Seed and Irrigation Company and was introduced by appellants as tending to establish an admission by appellee of its liability. Under such circumstances the evidence of the witness explanatory of the statement in the letter was competent. Smith v. Mayfield, 163 Ill. 447.

The eighth instruction given at the instance of appellee is awkwardly constructed and somewhat ambig-

uous, but we do not think it necessarily bears the construction put upon it by appellants, or that it operated to their prejudice. Whatever ambiguity there is in the instruction is cured by the sixth instruction given at the request of appellants.

It is insisted that the fourth instruction given at the instance of appellee is erroneous because it is based upon the hypothesis that if the 140 bushels of seed corn was sold to appellants under an independent contract the jury would be warranted in finding for appellee upon that issue. If the 140 bushels of corn was sold under an independent contract there was no basis for appellants' claim of set-off, which claim was only available if the corn was sold under the alleged contract between appellee and the Western Seed and Irrigation Company. The instruction is not subject to the criticism urged against it.

The four instructions given at the instance of appellee could not have misled the jury when considered in connection with appellee's third instruction, which embodies every element essential to a recovery upon appellee's theory of the case.

The action of the court in giving, refusing and modifying certain other instructions is urged as error, but upon a consideration of the same we fail to find any prejudicial error therein.

The merits of this controversy appear from the evidence in the record to be with appellee, and the judgment of the Circuit Court will be affirmed.

*Affirmed.*