# H. Willis Binnie, Appellee, v. Western Live Stock Insurance Company, Appellant.

## Gen. No. 6,580.

1. INSURANCE, § 436*—*binding effect of requirement for notice of sickness of animal.* The provision in a contract for insurance of a stallion that the insurer should not be liable if the insured, in case of sickness or accident to the animal, should fail to give notice at once of such sickness or accident, with the name and address of the veterinarian employed, is binding upon the parties.

2. INSURANCE, § 380*—*binding effect of provision of nonwaiver of defenses by furnishing proofs of loss.* The condition, in proofs of loss of a stallion sent to the insured by the insurer, that the furnishing of such proofs in no manner waived any defenses the insurer then had or might have to the payment of any claim thereunder, prevents the furnishing of same from being a waiver of any such defenses.

3. INSURANCE, § 683*—*when correctness of statements in proofs of loss as to cause of death of animal is question for jury.* In an action on a policy of insurance on the life of a stallion, it was a question for the jury whether the statements in the proofs of loss that the stallion died of the illness it had on the first day of its sickness, or contradictory testimony, at the time of trial 3 years later, that the horse did not die of such illness, were true.

4. INSURANCE, § 690*—*when instruction on estoppel to claim forfeiture of policy for failure to give notice of sickness of animal is erroneous.* In an action on a policy of insurance on a stallion, an instruction that if the insurer forwarded to the insured blank proofs of loss and the insured filled out such proofs of loss and returned them to the insurer and the latter received them and retained them, then it was estopped to claim a forfeiture by reason of the failure to give notice of the sickness of the horse, was erroneous as depriving the insurer of a valid defense if the evidence showed that the horse died of the same illness that affected it the first day of its sickness, as stated in the proofs of loss.

5. INSURANCE, § 652*—*when evidence of sending of proofs of loss to insurer admissible.* In an action on a policy of insurance on the life of a stallion, it was not error to permit plaintiff to testify that he sent proofs of loss to defendant.

6. INSURANCE, § 590*—*what is insufficient replication to plea of failure to give notice of sickness of animal.* It is not a sufficient

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

replication to a plea, in an action on a policy of insurance on a stallion, that plaintiff failed to give notice of the sickness of the animal, as required by the policy, to state that plaintiff had delayed suit at the request of the adjuster, and did not commence suit until informed that the claim would not be paid.

7. INSURANCE, § 652*—*when meaning of proofs of loss of animal may be explained.* Proofs of loss of a horse are not part of the contract of insurance, and the meaning thereof may be explained within certain limits.

8. INSURANCE, § 652*—*what evidence is admissible to explain statement in proofs of loss as to treatment of sick animal.* In an action on a policy of insurance on the life of a stallion, it was proper for plaintiff to explain a statement in the proofs of loss that treatment was given for "influenza which affected heart," by showing that plaintiff was not a veterinarian, that he did not himself know what the affection was, that that statement was made to him by a veterinarian who attended the horse and he supposed it to be true when he made the proofs of loss, but afterwards ascertained that was not the malady for which the horse was treated.

9. INSURANCE, § 624*—*what evidence of statements of adjuster after loss as to payment of claim properly excluded.* In an action on an insurance policy on the life of a stallion, it was proper to exclude evidence of statements by defendant's adjuster after the loss that there was no question but that the claim would be settled promptly, and that, while plaintiff ought to have notified the company, as the policy required, that he did not think it made any difference, where the adjuster was merely expressing his opinion as to what the company would do.

Appeal from the Circuit Court of Kane county; the Hon. CLINTON F. IRWIN, Judge, presiding. Heard in this court at the April term, 1918. Reversed and remanded.    Opinion filed October 10, 1918.

THOMAS J. GRAYDON, of Chicago, and ROBERT G. EARLEY, of Geneva, for appellant.

DEGOY B. ELLIS, of Elgin, and IRVING M. WESTERN, of Elgin, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Under date of January 12, 1915, appellant insured appellee in the sum of $500 upon a Clydesdale stallion, owned by the appellee. On March 29, 1915, the horse was taken from a train in a sick condition. He died on April 2, 1915. Appellee furnished appellant proofs of loss. Appellant did not pay the policy and this suit was brought thereon. After much pleading there was a jury trial and a verdict and a judgment for plaintiff for $562.50, being the policy and interest. Defendant appeals and plaintiff assigns cross errors.

It is argued that the court erred in sustaining a demurrer to defendant's second rejoinder to plaintiff's seventh replication to defendant's second plea. The second plea set up that the policy contained an agreement that defendant should not be liable under the policy if plaintiff, in case of sickness or accident to the animal, should fail to give notice at once to the secretary of defendant of such sickness or accident, with the name and address of the veterinarian employed; and the plea averred that said horse became sick on March 29, 1915, and so remained until it died on April 2, 1915, and that plaintiff did not give said notice until after the death of the animal, on April 2nd, and that because thereof defendant was not liable on the policy. The contract so set out was one which the parties had a right to make and which was binding upon the parties. *Illinois Live Stock Ins. Co. v. Kirkpatrick,* 61 Ill. App. 77; *Talbot v. Atlantic Horse Ins. Co.,* 193 Ill. App. 587; *Van Valkenburg v. Granite Live Stock Ins. Co.,* 205 Ill. App. 28; *Swain v. Security Live Stock Ins. Co.,* 165 Mass. 321, 43 N. E. 105; *Johnston v. Northwestern Live Stock Ins. Co.,* 107 Wis. 337, 83 N. W. 641; *Green v. Northwestern Live Stock Ins. Co.,* 87 Iowa 358, 54 N. W. 349; *Alston v. Northwestern Live Stock Ins. Co.,* 7 Kan. App. 179, 53 Pac. 784. The plea therefore presented a good defense. The seventh replication to said plea set up that after the horse died and after defendant knew plaintiff had failed to render said notice, as required

by the policy, defendant sent plaintiff printed proofs of his claim for plaintiff to fill out and return, and which proofs plaintiff did fill out and return and which proofs defendant received and retained without objection. The second rejoinder to said replication set up that in said proofs of claim sent by defendant to plaintiff was the following condition: "The insured hereby agrees that the furnishing of this proof of death to the insured by the insurance company in no manner waives any defense it now has or it may have to the payment of said claim made hereunder." The rejoinder averred that as a part of said proofs of claim plaintiff executed said condition and agreement and returned the same with the proofs to defendant, and that thereby any alleged waiver by sending said proofs was prevented and waived by the plaintiff. It has frequently been held that such a condition, expressed either in the proofs of loss sent by an insurance company to a claimant for his execution, or in a letter accompanying the same, prevents the furnishing of proofs to the claimant from being a waiver of any such defense. *Crotty v. Union Mut. Life Ins. Co.*, 144 U. S. 621; *Meech v. National Acc. Society*, 50 N. Y. App. Div. 144, 63 N. Y. Supp. 1008; *Tuttle v. Iowa State Traveling Men's Ass'n*, 132 Iowa 652, 104 N. W. 1131; *Loesch v. Union Casualty & Surety Co.*, 176 Mo. 654, 75 S. W. 621; *Elhart v. Pacific Mut. Life Ins. Co.*, 47 Wash. 659, 92 Pac. 419; *Roth v. Mutual Reserve Life Ins. Co.*, 162 Fed. 282. The second rejoinder therefore set up a good answer to the seventh replication to the second plea and the court erred in sustaining the demurrer thereto.

Plaintiff produced proof tending to show that the horse did not die of the illness which it had when it was taken off the train on March 29th. Defendant introduced the proofs of loss which plaintiff testified he filled out and which he furnished to the company, and also a letter which he sent to the company a few days

later. It is clear therefrom that when plaintiff filled out the proofs of loss and wrote said letter he considered that the horse died of the disease which he had on March 29th. Under the provision of the policy, if the horse died from that disease, defendant was relieved of responsibility by plaintiff's failure to give notice at once, which both sides agree means within a reasonable time. It should have been submitted to the jury to determine whether the statements contained in the proofs of loss or those testified to by plaintiff nearly 3 years later were true. The court, by its first instruction, given at plaintiff's request, deprived defendant of that defense by telling them that if defendant forwarded to plaintiff blank proofs of loss and plaintiff filled out said proofs and returned them to defendant and defendant received and retained them, then defendant is estopped to claim a forfeiture by reason of plaintiff's failure to give notice of the sickness of the horse. It was error to give this instruction and it deprived defendant of a valid defense, if the horse died of the sickness which he had on March 29th.

As a reversal must follow, we deem it unnecessary to discuss the evidence upon the question whether this horse died of the disease from which he was suffering on March 29th, or whether he recovered from that and died of something else, happening on April 2nd. We are of opinion that the court did not err in permitting plaintiff to testify that he sent proofs of loss to the defendant.

In his cross errors appellee prayed, among other things, "that said judgment may be reversed and said cause not remanded." If that prayer were granted, it would end the suit adversely to appellee. We assume that appellee's counsel used those words inadvertently. There is no abstract setting out sufficiently the matters relied upon by appellee in his cross errors. We might decline to consider them on that account,

but we think best to consider them upon the merits. Appellee contends that the court erred in sustaining a demurrer to his second amended fifth replication to defendant's second plea. The second plea has been stated above. Said replication sets up that printed proofs of loss were sent by defendant to plaintiff and were by plaintiff received and returned. It sets up certain answers in the proofs of loss; that afterwards defendant sent an adjuster to plaintiff and they met and that adjuster said defendant had investigated the claim and did not believe it was liable; that plaintiff then said that if the claim was not paid at once he would sue the defendant; that said adjuster requested plaintiff not to start suit but to wait until he could make a further investigation and report to defendant; that defendant felt that said claim was just and would probably pay it, though technically all of the conditions of the policy had not been complied with; that plaintiff did delay enforcement of his claim until finally informed by defendant that, after investigation, it had finally decided that it would not pay the claim. If this had been a reply to a plea of the statute of limitations, where plaintiff had at request of defendant delayed suit until the statute had run, it might be a good reply to such plea. We are of opinion, however, that it constitutes no reply to the plea that plaintiff failed to give notice of the sickness of the animal, as required by the policy. The demurrer was therefore properly sustained.

Appellant offered in evidence said proofs of loss, executed by appellee, as admissions and as tending to impeach the statements made by appellee in his testimony in chief. The court refused to permit him to explain the meaning of the statements in his proofs of loss. Such proofs were not parts of the contract. It is clear that such statements may be explained within certain limits. *Smith v. Mayfield,* 163 Ill. 447; *Supreme Tent Knights of Maccabees v. Stensland,* 206

Ill. 124; *Dady v. Condit*, 209 Ill. 488; *Chicago, B. &
Q. R. Co. v. Bartlett*, 20 Ill. App. 96 (where numerous
authorities are cited); *Cleveland Seed Co. v. Moore*,
142 Ill. App. 615; *Harrison v. Thackaberry*, 154 Ill.
App. 246; *Birmingham Fire Ins. Co. v. Pulver*, 126
Ill. 329, 335; *Aetna Ins. Co. v. Stevens*, 48 Ill. 31;
*Supreme Lodge, Knights of Pythias of the World v.
Beck*, 181 U. S. 49; 19 Cyc. 854; 14 R. C. L. 1445, 1446;
Jones on Evidence (2nd Ed.), sec. 296. Appellee
should have been permitted to explain his meaning in
said language used in the proofs of loss, within the
limits of the foregoing decisions. For example, he
stated that the treatment was given for "influenza
which affected heart." We think it would be permis-
sible for him to explain that he was not a veterinarian,
that he did not himself know what the affection was,
that that statement was made to him by the veterinar-
ian who attended the horse and he supposed it to be
true when he made the proof of loss, but afterwards
ascertained that that was not the malady for which the
horse was treated. The effect of the explanations
upon the credit to be given by the jury to plaintiff's
testimony would be a matter for the jury. Appellee
testified that Arvedson, the agent who took the appli-
cation for the policy, told him after the death of the
horse that there would be no question but that the
claim would be settled promptly, and that while ap-
pellee ought to have notified the company, as the policy
required, that he did not think it would make any dif-
ference any way. The court excluded those state-
ments by Arvedson. We think the court was correct
in this. Arvedson was not professing to bind the com-
pany but only to give his opinion as to what the com-
pany would probably do. We feel it unnecessary to
determine the extent to which the agent could bind the
company. The judgment is reversed and the cause is
remanded.

*Reversed and remanded.*