(4 App. Div. 503)

### COHEN v. SILVERMAN.

(Supreme Court, Appellate Division, Fourth Department. April, 1896.)

1. CONTRACTS—INTERPRETATION.
    Defendant, who was engaged in the business of lending money on chattel mortgages and pledges, and selling jewelry and merchandise on installment contracts, sold the business to plaintiff, under a written contract guarantying the title to all pledges and the collection of all mortgages, but requiring plaintiff to signify her dissatisfaction with any mortgage or the title to any property within three months from the date of the contract, and, if dissatisfied with any such title, to foreclose the mortgage "at once." *Held*, that the contract did not require plaintiff to foreclose a mortgage within three months from the date of the contract.

2. WORDS AND PHRASES.
    The term "at once" does not mean instantaneously, but within a reasonable time.

Appeal from judgment on report of referee.

Action by Elizabeth Cohen against Rebecca Silverman. The complaint was dismissed, and plaintiff appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

E. N. Wilson, for appellant.
Frank Hopkins, for respondent.

FOLLETT, J.   On March 15, 1890, the defendant was, and for some years before had been, engaged, at the city of Syracuse, in the business of loaning money on chattel mortgages, pledges, and notes, and in selling jewelry and merchandise on installment contracts.   On the date mentioned, the litigants entered into a written contract, by. which the defendant agreed to sell and the plaintiff to purchase the aforesaid business upon terms specified.   The contract contains the following provisions:

"Said first party [defendant] further agrees that she will guaranty the title to all pledges now in her possession, and which she will hereafter by bill of sale transfer to said second party [plaintiff].   Said first party [defendant] further agrees that she will guaranty unto said second party [plaintiff] the collection of all mortgages turned over by her, and now owned by her, if the second party [plaintiff] shall be dissatisfied with her security, or with the title to the property covered by such mortgages, within three months from the time when the bill of sale hereinbefore referred to shall be executed by said first party [defendant] to said second party [plaintiff].   If said second party [plaintiff] becomes dissatisfied with any such title she shall foreclose the same at once, if the same can be foreclosed by its terms; and if there be any deficiency or any mistake of title in the said goods, then the said first party [defendant] agrees to make the second party [plaintiff] whole by paying whatever deficiency shall occur, and interest at the rate of six per cent. from the time said second party [plaintiff] advances said money to the time when it shall be demanded of said first party [defendant].   Said parties further agree that, should there be any chattel mortgages upon which there is due more than one commission, and should the same be foreclosed by said second party [plaintiff], and the deficiency be found, she, the said second party [plaintiff], agrees to claim only what she has paid for said chattel mortgage from said first party [defendant], allowing said commission to be deducted. And the said first party [defendant] further agrees to guaranty the payment to said second party [plaintiff] of all notes and orders or bills of sale, which she will transfer to said second party [plaintiff], which are not otherwise secured, and also the payment of all goods which have been sold upon contract and not otherwise secured."

Afterwards an inventory of the property, described in general terms in the foregoing contract, was made, and on the 1st day of April, 1890, the defendant executed and delivered a bill of sale of the property, a schedule of which was annexed.   The bill of sale contains the following provisions:

"Said first party [defendant] further guaranties unto the said second party [plaintiff] the collection of all mortgages turned over by her and now owned by her;  but said second party [plaintiff] must signify her dissatisfaction with such mortgage, or the title to the property covered by such mortgage, within three months from the date hereof, and when second party [plaintiff] signifies such dissatisfaction, said first party [defendant] agrees to make such title good;  but if the same is not done within three months, said second party [plaintiff] is bound to keep the same.   If said second party [plaintiff] becomes dissatisfied with any such title she shall foreclose the same at once, if the same can be foreclosed by its terms;  and if there be ·any deficiency or any mistake of title in the said goods, then the said first party [defendant] agrees to make the said second party [plaintiff] whole by paying whatever deficiency shall occur, and interest at the rate of six per cent. from the time said second

party [plaintiff] advances said money to the time when it shall be demanded by the said first party [defendant]. Said second party [plaintiff] further agrees that, should there be any chattel mortgage upon which there is due more than one commission, and should the same be foreclosed by the second party [plaintiff], and a deficiency be found, then said second party [plaintiff] agrees to claim only what she has paid for said chattel mortgage to said first party [defendant], allowing said commissions to be deducted. And the said first party [defendant] hereby guaranties the payment to the said second party [plaintiff] of all notes, orders, and goods sold upon installment plan, which said notes, orders, and goods are hereby transferred to said second party [plaintiff]."

On the 13th of June, 1890, the plaintiff personally served upon the defendant a written notice expressing her dissatisfaction with certain chattel mortgages, bills of sale, notes, pledges, and installment contracts which were mentioned and described in a schedule annexed. The reasons for her dissatisfaction were set forth. The defendant refusing to make good her guaranty in respect to any of the 'securities, this action was begun on the 16th of September, 1890. The learned referee finds that the chattel mortgages were not foreclosed until after July 1, 1890, and held, as a conclusion of law, that, by the terms of the bill of sale, the plaintiff was bound to foreclose them before that date. In this construction of the contract we think the learned referee erred. The contract and the bill of sale required the plaintiff to express her dissatisfaction with any of the securities before the 1st of July, 1890, but we fail to find any provision which required the plaintiff to foreclose the mortgages on or before that date. The plaintiff had until the very last day of June to express her dissatisfaction, and she could not have availed herself of the provisions of the contract and foreclosed the mortgages before July 1st. By the contract and the bill of sale, the plaintiff, upon becoming dissatisfied with any of the mortgages, was required to foreclose them "at once," but, as we read the contract, not until after she had become dissatisfied with them. The term "at once," like the words "forthwith" and "immediately," does not mean instantaneously, but requires action to be taken within a reasonable time (Bennett v. Insurance Co., 67 N. Y. 274; Bamforth v. Raddin, 14 Allen, 66; Roberts v. Brett, 11 H. L. Cas. 337; Oldershaw v. King, 2 Hurl. & N. 399, 517), which, under the circumstances of this case, was a question of fact, to be determined by the referee; and the conclusion of law of the learned referee that, because the mortgages were not foreclosed before July 1, 1890, the plaintiff lost her remedy, cannot be sustained. Of course, the plaintiff was bound to exercise due diligence to attempt to foreclose the mortgages, and to collect the obligations; but in cases where neither the mortgagors nor the mortgaged property could be found by the exercise of diligence, a foreclosure was not required in order to perfect the plaintiff's right of action. The judgment should be reversed, and a new trial granted, with costs to abide the event.

Judgment reversed, and a new trial ordered, with costs to abide the event. All concur.