Johnston and another vs. Northwestern Live Stock Ins. Co.

JOHNSTON and another, Respondents, vs. NORTHWESTERN LIVE
STOCK INSURANCE COMPANY, Appellant.

*September 4 — September 25, 1900.*

(1, 2) *Appeal: Undertaking: Corporate suretyship: Justification of sureties: Certificate of commissioner of insurance: Perfecting undertaking on leave of supreme court.　(3-8) Insurance of live stock: Condition of policy as to notice: Forfeiture: Promissory warranty: Breach: Mortgage: Amount due: Court and jury:* Res adjudicata: *Representation or warranty.*

1. Under the statutory provisions,— sec. 3052, Stats. 1898, requiring the execution of an undertaking for costs by two sureties to render an appeal effectual for any purpose; sec. 3065, providing that such an undertaking shall be of no effect unless accompanied by the affidavits of the sureties justifying as required; and sec. 1966—34, providing that a certified copy of the certificate of the insurance commissioner as to the authority of a surety company to transact business shall be *equivalent* to the justification required of sureties by law,— an undertaking for costs on appeal, executed by a surety company, must have attached such certificate of the commissioner of insurance in order to make the appeal effective.

2. In this case, where the insurance commissioner's certificate was not attached to an undertaking for costs on appeal, executed by a surety company, leave was granted, on payment of motion costs, to perfect the undertaking by attaching thereto such certificate.

3. Where an insurance policy on a horse contained a provision that, in case of sickness, the insured should *at once* notify the company by telegram, otherwise the policy to be void, the fact that the horse took sick in the morning of Sunday, and died in the afternoon of that day, and that there was no telegraph station nearer than nine miles, is insufficient to excuse failure to comply with that stipulation of the policy.

4. In such case the agreement as to notification is in the nature of a promissory warranty, which must be strictly fulfilled before there can be a recovery; and nothing short of impossibility of fulfillment can excuse its breach.

5. In such case the question of the materiality or usefulness of the agreement to notify the insurance company *at once* by telegraph in case of the sickness of the horse, is not open to be submitted to the jury.

VOL. 107 — 22

Johnston and another vs. Northwestern Live Stock Ins. Co.

6. Action having been brought on an insurance policy covering a horse incumbered by a mortgage for $800, it appeared that, in the application for such policy, it was stated that the horse was mortgaged for $500, and that such statement was warranted to be true. It further appeared that after delivery of the mortgage and before the insurance was effected the mortgagor had paid $300 or more to the mortgagee, who at once applied the payment on other indebtedness due him from the mortgagor. It did not appear that the mortgagor made or attempted to make application of such payment upon the mortgage. *Held*, that the evidence showed without dispute that the amount of the incumbrance was $800 and interest; and that a question in the special verdict, What was the amount of the incumbrance on the horse at the date of making the application for the policy in suit? should have been answered by the court instead of being submitted to the jury.

7. Where on the retrial of an action, after appeal to the supreme court, the evidence is no more extensive upon the questions at issue than upon the former trial, the propositions of law laid down on the former appeal are *res adjudicata*, and must control, whatever the appellate court may think, on the second appeal, as to their soundness.

8. The application for the policy in suit contained a statement that the mortgage on the property insured was $500, when in fact it was over $800, and such statement was made a warranty by other provisions of the application. The insured testified that he told the agent the incumbrance was *about* $500, and remembered nothing further that was said in regard thereto. *Held* that, in the absence of the further statement by the insured that he did not know the amount of the incumbrance, together with the knowledge of the agent who wrote the amount into the application that assured did not know it and was not pretending to state it, the statement in the application was not a representation merely, but a warranty, which, being clearly breached, avoided the policy. Language in *Johnston v. Northwestern L. S. Ins. Co.* 94 Wis. 117, *held* not to have been intended as a decision that, if the insured said " about $500," it would be a representation merely, but if he said "$500," it would be a warranty.

APPEAL from a judgment of the circuit court for Monroe county: O. B. WYMAN, Circuit Judge.  *Reversed.*

This is an action upon a policy of insurance upon a horse for the sum of $800. The case was here upon an appeal

from a former judgment, and was reversed for error, 94 Wis. 117. The evidence shows that the horse was chattel mortgaged by the plaintiff *Johnston* to the plaintiff *Smith*, and the policy was made payable to the plaintiff *Smith* as his interest as mortgagee might appear. There was a written application for the policy, signed by *Johnston*, in which it was stated that the horse was mortgaged to *Smith* for $500, and the application provided that the statements contained therein were warranted to be true. The policy also provided that it was made and accepted upon the understanding and agreement that all the statements made in the application were true, and were warranted to be true. There was a further provision in the policy as follows: "That said insured has agreed and is required to use due diligence, precaution, and care in the use, and for the safety, health, and preservation, of said live stock, and in case of sickness or accident agrees to promptly summon to his aid the best veterinary surgeon to be had in the vicinity, or, if none can be had, to otherwise provide the best available care and attention; and he shall at once notify this company, by telegram, of the fact of such sickness or accident; otherwise, this policy shall be void." The horse died of disease on November 5, 1893, and due proofs of loss were made on or about November 13th following. The defenses brought by the company were, first, that the horse was in fact mortgaged for $800 instead of $500, and that the company was never notified by telegram of the sickness of the horse, as provided in the policy.

The court submitted certain special questions to the jury in addition to the general verdict, which questions, and the answers thereto, were as follows: "(1) What was the amount of the incumbrance by mortgage on the horse Honfleur at the date of the making of the application for the policy in suit? *A.* $525. (2) Did the plaintiff *Johnston*, at the time the application was made, state to the agent of the

company that there was a mortgage of five hundred dollars ($500) on the horse? *A.* No. (3) Did the plaintiff *Johnston*, at the time the application for the policy was made, state to the agent of the company that there was a mortgage of about five hundred dollars? *A.* Yes. (4) Was the statement as to the incumbrance or mortgage upon the horse made by the plaintiff *Johnston* to the agent of the company at the time of the application for insurance a warranty or representation merely? *A.* Representation. (5) Did the plaintiff *Johnston* promptly summon to his aid the best veterinary to be had in the vicinity to care for the horse? *A.* Yes. (6) In case you answer the foregoing question in the negative, then, before the veterinary Snow arrived at Ontario to treat the horse, did *Johnston* otherwise provide the best available care and attention for the sick horse? *A.* Yes. (7) Did the plaintiffs or either of them at once notify the defendant company by telegram of the fact that the horse was sick? *By the Court:* No. (8) Could the plaintiff *Johnston*, by the exercise of ordinary care and reasonable diligence, under the circumstances of the case, have sent a telegram to the defendant after he knew the horse was sick, and before the animal died? *A.* No. (9) In case the plaintiffs are entitled to recover under the law, at what sum do you assess their damage? *A.* $981.35. (10) For which party do you find,— for the plaintiffs or for the defendant? *A.* For the plaintiffs."

Upon this verdict judgment for the plaintiffs was rendered, and the defendant appealed.

For the appellant there was a brief by *N. T. Guernsey, W. H. Wallingford,* and *S. W. Button,* and oral argument by *Mr. Button* and *Mr. Wallingford.*

*C. M. Masters,* for the respondents.

WINSLOW, J.    A motion to dismiss the appeal in this case on the ground that no sufficient undertaking had been given

was made by the respondents prior to the argument, and this motion must first be considered. The undertaking upon the appeal was executed by the United States Fidelity & Guaranty Company, a foreign suretyship corporation, duly admitted to transact business in this state under the provisions of sec. 1966—32, Stats. 1898. No certificate of the insurance commissioner showing the authority of the company to do business in this state was attached to the undertaking, nor was any certified copy of such certificate attached thereto, and it is claimed by the respondents that such certificate is an essential to the validity of the appeal. This contention is based upon the following statutory provisions: Sec. 3052, which requires the execution of an undertaking for costs by two sureties in order to render an appeal effectual for any purpose; sec. 3065, which provides that such undertaking shall be of no effect unless accompanied by the affidavits of the sureties, stating that they are worth double the amount of the undertaking above their debts and liabilities in non-exempt property; and sec. 1966—34, which provides, among other things, that the certificate of the insurance commissioner as to the authority of a surety company to transact business (or a certified copy thereof) shall be *equivalent* to the justification required of sureties by law. From these various provisions it is argued that the insurance commissioner's certificate becomes in such case, in legal effect, the justification, which is just as essential in case of an undertaking given by a surety company as is the affidavit or justification made by ordinary sureties in case of an undertaking signed by individuals. On the other hand, it is claimed by the appellant that sec. 1966—33, which is the section authorizing the execution of bonds and undertakings by surety companies, contains no requirement that they should be accompanied by the certificate of the commissioner, is complete in itself, and places the undertaking, when executed by a surety company, upon the same footing as an undertaking

executed by sureties who have duly justified. The question is certainly not as clear as might be desired, but in view of the evident intention of the legislature that the respondent should always be protected by a bond which should not only be sufficient, but should show its sufficiency upon its face, we hold that upon an undertaking of this kind the commissioner's certificate is required to be attached in order to make the appeal effective.

The appellant, while contending that the undertaking was perfect, presented at the same time a proper certificate from the insurance commissioner, and asked leave to attach the same to the undertaking in case the court should consider it necessary, under the provisions of sec. 3068, Stats. 1898. Undertakings upon appeal, which are defective on account of imperfect justification of the sureties, have frequently been allowed to be perfected by this court. *Helden v. Helden,* 9 Wis. 557; *Smith v. C. & N. W. R. Co.* 19 Wis. 89; *Ulrich v. Farrington Mfg. Co.* 69 Wis. 214. It was therefore ordered that the appeal be dismissed, unless the appellant within five days pay the respondents $10 motion costs, in which case the certificate presented might be filed, and the undertaking perfected. It appears that the terms imposed have been complied with, and consequently the appeal will be considered upon its merits.

Since the case was here upon the former appeal, a second substantive defense has been added to the defense made upon the previous trial, and this defense will be first considered. The policy provides that, in case of sickness of the horse, the insured "shall *at once* notify the company by telegram of the fact of such sickness; . . . otherwise, this policy shall be void." The additional defense now made is that this condition was never complied with, and that a verdict for the defendant should have been directed on this account.

We do not see how this contention can be satisfactorily met upon the evidence before the court. The fact was with-

out dispute that the horse was found to be sick in the morning of Sunday, November 5, 1893, and died in the afternoon of the same day, and that no telegram notifying the company of the fact was ever sent. The jury found such to be the fact, in answer to question 7 of the special findings.

It is true that the jury found, in answer to question 8, that *Johnston* could not, by the exercise of ordinary care and reasonable diligence, under the circumstances of the case, have sent a telegram to the defendant after he knew the horse was sick and before the animal died. There are two radical difficulties with this finding which render it practically valueless: First. It is unsupported by the evidence. The only evidence tending to show what steps were taken when the horse was discovered to be sick was that of the plaintiff himself, and was as follows: "The horse died on November 5, 1893, at Ontario, Wisconsin. I first noticed the horse was sick about half past seven in the morning. I gave the horse first a quart of linseed oil, and then either went or sent for Dr. Abbott, a physician of Ontario. He came and examined the horse, and treated him. He left two doses of medicine for him. One we gave him at the time, I think, and he told me some time in four or five hours to give him another one, which I did. He told me he thought the horse was in a bad condition, and advised me to procure some good veterinary. I sent for J. W. Snow, of Sparta, a veterinary surgeon. Had known him as a veterinary eight or nine years prior to that time. I wrote out a telegram for Snow, and directed the messenger to send it. It is not clear to me now whether he couldn't get the Sparta telegraph office, or the Norwalk office, but anyway the message was not sent, and he came on to Sparta, and got Snow, and Snow arrived at Ontario about dusk, or a little after, that evening. It is twenty-four or twenty-five miles to Sparta, I think. It is nine miles from Ontario to Norwalk. Wilton would be the nearest telegraph office to Ontario, but Norwalk is the

most practicable place. Norwalk is, I think, five or six miles nearer Sparta than Wilton. When Snow reached there, the horse was dead. The horse died probably at two or three o'clock in the afternoon, if my memory serves me right. . . . I don't think I gave any notice to the company of the sickness of the horse prior to his death." It appears from this evidence that Wilton was the nearest telegraph office to Ontario, where the horse was kept, and that Norwalk was the most practicable place, but it does not appear that it was impossible or impracticable to telegraph to the company from either place, and in fact it does not appear that any attempt was made to telegraph from either place or from Sparta. The messenger who was sent to telegraph for a veterinary surgeon was not put upon the stand. Second. Even if the finding were supported by evidence, it is insufficient to excuse the failure to telegraph the company. The agreement was absolute to telegraph to the company at once, not to use ordinary care or reasonable diligence to do so. In the event of failure to telegraph at once, the policy by its terms was avoided. This was an agreement in the nature of a promissory warranty, and if not strictly fulfilled there could be no recovery. Certainly, nothing short of impossibility of fulfillment could excuse a breach. Nor does it avail to say that its fulfillment would have done no good in this case. The parties chose to make it an absolute essential to the validity of the contract upon which the right of recovery depends. In effect, it is a promissory warranty, and the question as to its materiality or usefulness is not open. 3 Joyce, Ins. § 1962.

The remaining defense was the same as that urged upon the former trial, namely, a breach of the warranty as to the amount of the chattel mortgage upon the horse; it being claimed by the defendant that the mortgage to *Smith* upon the horse was in fact $800 instead of $500, as stated in the application. The evidence showed that *Johnston* bought

the horse of *Smith* in March, 1892, for $1,400, and at the time of the purchase, or soon after, paid $600 in cash of the purchase price, leaving $800 unpaid, for which *Smith* held a mortgage on the horse. During the year 1892 *Johnston* paid *Smith* various sums, amounting to more than $300, which he (*Johnston*) claims should have been credited on the mortgage. There were, however, other transactions between *Johnston* and *Smith*, upon which *Smith* claimed as due him over $300, and he (*Smith*) claimed to apply the said payments upon this outside indebtedness. This was the situation when the application for insurance was made. *Johnston* further claims that defendant's agent (Walton) filled out the application for insurance, and that when Walton asked him the amount of the incumbrance he said, "About $500," and that Walton wrote the answer in the application "$500." *Johnston* signed the application, but does not testify whether he read it or not. Walton denies that *Johnston* said, "About $500," and says that the answer was, "$500," just as it was written. By reference to the verdict, it will be seen that the jury found (1) that the amount of the incumbrance was in fact $525; (2) that *Johnston* stated to the agent that the mortgage was about $500; and (3) that this statement was merely a representation. Upon these findings the plaintiffs claim that the defense of breach of warranty as to incumbrances has been successfully avoided, and the trial court so held.

As to the first of these findings, namely, the finding that the amount of the incumbrance was $525, it must be said that it is absolutely unsupported in the evidence. It is a question of application of payments. It is familiar law that, where a debtor makes payments to his creditor to whom he is indebted on several different accounts, the debtor may apply the payment upon either account, as he chooses, and it must be so applied; but in the absence of such application by the debtor at the time of payment, or an agreement

by the creditor to so apply it, the creditor may make application of the payment upon such account as he chooses. We have searched the case in vain for evidence that *Johnston* made or attempted to make application of the payments in evidence upon the mortgage debt, and, on the other hand, the evidence, though meager, leaves no reasonable doubt but that *Smith* at once applied them upon the other indebtedness which he claimed against *Johnston*. This renders it clear that the amount of the incumbrance was $800 and interest, instead of $525, and the jury should have been so instructed.

Coming, now, to the question whether the statement in the application that the incumbrance on the horse was a warranty or merely a representation, we find that the evidence is no more extensive upon the question than upon the former trial; hence the propositions laid down upon the former appeal are *res adjudicata*, and must control the case in subsequent trials, whatever we might now think as to their soundness. Upon the former appeal (94 Wis. 117) it was said, in substance, that the statement in the application was on its face a warranty, but that if *Johnston* told the agent who wrote the application that he did not know the amount, but that it was "about $500," and the agent understood that it was not intended by *Johnston* to state the exact amount, but wrote it in that form in the application, without *Johnston's* knowledge or consent, it might well be that it should not be construed as a warranty, but as a representation merely; that this knowledge by the agent might estop the defendant to claim a warranty; that whether the statement in the application is properly a warranty or a representation is a question for the jury upon all the evidence bearing upon it; that if a warranty it must be strictly satisfied, but that if a representation a variance will not necessarily avoid the policy, in the absence of bad faith, unless the variance is substantial and material to the risk; and that

this is a question for the jury. These principles must be applied to the present record. As we have seen, the evidence showed without dispute that the amount of the incumbrance was $800 and interest, instead of $500, and hence the first question should have been answered by the court instead of being submitted to the jury to speculate upon. This left only two questions, namely: (1) Was the statement as to incumbrance a representation or a warranty? and, (2) If a representation, was the variance substantial and material to the risk? As to the first of these questions, the evidence before us does not, in our judgment, justify a finding that it was a representation merely. The plaintiff *Johnston* testified that he told Walton that the mortgage on the horse was about $500, and that he remembered nothing further that was said in regard to it. He does not now claim that he told Walton that he did not know the exact amount, but thought it was about $500. This was his testimony upon the previous trial, and it was upon this basis that it was said in the former opinion, in substance, that if he made this statement, and the agent understood that there was no intention of stating the exact amount, the knowledge of the agent might be the knowledge of the company, and estop the company from claiming a warranty. This element is lacking from the question as presented on this appeal, and it is a vital omission, because the former ruling was based on this consideration, namely, that plaintiff stated that he did not know the amount, and the defendant's agents thus knew he did not know the amount, and the company accepted the risk with this knowledge.

It certainly was not intended in the former decision to decide that if the insured said, "About $500," it would be a representation merely, but that if he said, "$500," it would be a warranty. This would be absurd. There must also have been a statement by *Johnston* that he did not know the amount, and knowledge by the agent that he did not

know it, and was not pretending to state it. There being no such statement 'now claimed, there is no evidence on which it can be found that the statement was a representation merely.

Being a warranty, there was no question as to its substantiality or materiality to be submitted to the jury. There was a clear breach, and the policy was avoided. Had it been a representation merely, we are unable to see how it could be held that a variance of $300 between the actual incumbrance and the representation could be held unsubstantial or immaterial to the risk, when the policy is but $800, and the real incumbrance is nearly double the amount of the one represented. We are not to be understood as reaffirming the abstract principles laid down upon the former appeal, but simply as applying them to the case because they are res adjudicata.

By the Court.— Judgment reversed, and action remanded for a new trial.