PERRY *v.* JOHN HANCOCK MUTUAL LIFE-INSURANCE CO.

147   645
e149 ³471
150 ³473

1. LIFE INSURANCE — ACTION ON POLICY — INSTRUCTIONS — HARMLESS ERROR.

Where, in an action on a life-insurance policy, the evidence shows that assured was in good health at the time of signing her application for the policy, unless she had heart disease, and the jury find that she did not have heart disease, an instruction capable of the construction that the policy would not be avoided if assured did not know she had heart disease and answered the questions honestly, is not prejudicial to defendant.

2. SAME—SPECIAL VERDICT—EFFECT.

A special finding that a physician was treating assured immediately previous to the time she made application for insurance is not conclusive for defendant, where, by another special finding, the jury find that at that time she had not the disease he claimed to be treating her for, and from which she died.

3. SAME—FORFEITURE—WAIVER—KNOWLEDGE OF AGENT.

Where the agent of a life-insurance company, who took an application for insurance at assured's residence, wrote assured's occupation therein as housewife, under such circumstances that he must have known her to be a prostitute, a special finding that the company's manager never was in assured's house is unimportant on the question of waiver of the forfeiture.

Error to Wayne; Hosmer, J. Submitted January 25, 1907. (Docket No. 107.) Decided March 26, 1907.

Assumpsit by Lucinda Perry against the John Hancock Mutual Life-Insurance Company on a policy of insurance. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Van Zile & Brownson,* for appellant.

*Washington I. Robinson* and *Clarence P. Milligan,* for appellee.

BLAIR, J. This case was before the court at the January term, 1906, and is reported in 143 Mich. 290. A second trial resulted in a verdict for plaintiff, and defendant again brings the record to this court for review upon writ of error, contending that the court should have directed a verdict for defendant, or, failing that, should have entered judgment for defendant upon the special findings of the jury, because:

"*First.* She misrepresented in her statement as to her occupation. In her application are the following questions and answers : * * *

" (4) Present occupation ?

"*A.* Housewife.

" (5) What other occupation have you been engaged in for the last two years ?

"*A.* None.

" *Second.* She misrepresented as to the condition of her health :

" (6) Are you now in good health ?

"*A.* Yes.

" *Third.* She misrepresented as to consulting a doctor :

" (8) When did you last consult a doctor, and for what ?

"*A.* Three months ago; pneumonia; recovered."

The present record, so far as the testimony and points raised are concerned, is substantially the same as the previous record, upon which our decision was rendered establishing the law of this case. We held, upon the record here

before, that there was a case for the jury, and the case was therefore properly submitted to the jury, unless there was some error in the court's instructions; and judgment was properly entered upon the general verdict, unless it was inconsistent with material special findings of the jury. Special questions were propounded to the jury, which were answered as follows:

"*First.* At the time Annie Voakes, the assured, made application for the insurance in question, was she a prostitute and engaged in keeping a house of prostitution at 105 Franklin street in this city?

"*Second.* Was Superintendent Fentress at the house of Annie Voakes at any time prior to her death, and did he know prior to that time that she was a prostitute engaged in keeping a house of prostitution?

"*Third.* Was the cause of death of Annie Voakes primary cause heart disease, secondary cause dropsy, as stated in the certificate of death?

"*Fourth.* Was Annie Voakes on the 29th day of August, 1903, three months and nine days before she died on December 8, 1903, affected with heart disease?

"*Fifth.* Did Dr. Albert L. McGough attend Annie Voakes for the purpose of prescribing and treating her at any time during the month of August, 1903, prior to August 29, 1903?"

"The jury, after retiring to consider their verdict, returned into court and returned a general verdict for the plaintiff in the sum of $280.20, and returned their answers to the special questions submitted, as follows: To the first question the answer is, 'Yes.' To the second question the first part is answered, 'No;' the second part, 'Yes.' To the third question the answer is, 'Yes.' To the fourth question the answer is, 'No.' To the fifth question the answer is, 'Yes.'"

Counsel argue that the court erred in charging the jury, in substance, that if deceased, at the time of making the warranty of sound health, did not know of her unsoundness of health, and answered the questions honestly, it would not avoid the policy. The portion of the charge complained of does not necessarily bear the construction placed upon it by defendant's counsel. The court charged the jury explicitly that:

"If the assured was not in sound health—if she had any disease at the time she made this warranty that affected her general health in any way—it would be a breach of warranty, and would avoid the policy."

What the court further said upon this question was to the effect that the applicant would know whether she was in good health as well as the medical examiner, and whether she had heart disease, and, if she did not make an honest statement to the physician, it would avoid the policy; but, if she made an honest statement, the jury "would not be justified in finding that she had heart disease simply from the testimony which followed that she died at a certain date, and it was impossible that she was not suffering from heart disease at that time."

It clearly appears from the evidence in the case that the applicant was in good health at the time of signing the application in the case, unless she had heart disease. There was no pretense that there was anything else the matter with her at that time, on the part of defendant's witnesses. Defendant's counsel propounded to the jury the special question whether the applicant had heart disease on August 29, 1903, and the jury answered, "No." The answer of the jury, if supported by any testimony, disposes of the question of the applicant's health, and renders the errors complained of, if such they were, harmless. I think that the finding of the jury was not only supported by testimony, but by the great preponderance of the evidence.

It is further contended that the answer, "Yes," to the fifth special question, must be deemed conclusive for defendant. Dr. McGough, whose testimony is much relied upon by defendant, testified from memory of personal observation, and not from any treatment of or information from the insured or personal examination, that he knew she had heart disease. Defendant's medical examiner who made the examination in this instance certified, among other details, that the appearance of the applicant indicated "health and vigor;" that the sounds and action

of the heart were "regular and normal;" that there was "no indication of disease of the heart or blood vessels;" and, finally, that the applicant was "in perfect health and safely insurable." Nonmedical witnesses testified to the good health of the applicant during the period covered by Dr. McGough. The testimony of Dr. McGough was entirely inconsistent with that of the defendant's medical examiner, and the jury had a right to believe the medical examiner and other witnesses in preference to Dr. McGough. The finding that Dr. McGough treated applicant in August prior to the 29th is not, therefore, conclusive, since the jury have found that the applicant did not have the disease he claims he treated her for. The general verdict implies, and the jury must have found, that Dr. McGough's treatment was not for a serious complaint.

The finding that Mr. Fentress, defendant's Detroit manager, was never in the house occupied by applicant, is not important, so far as the question of waiver is concerned. It was not claimed on either trial that Mr. Fentress was present when the application was taken, but the agent appointed by the company in Boston, who had charge for the company of securing such applications. The court properly said to the jury:

"It does not seem to me that it is a conclusive question, because I think, if the money was paid, if the agent at the time he took this application knew of her character, and they gave her occupation as housewife, instead of prostitute, that I still think the company would be liable, and in this case I do not think the question is a conclusive question."

The instruction as to the effect of the agent's knowledge was in accordance with our previous decision, and the judgment is affirmed.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.