SIMMONS *v.* NATIONAL LIVE STOCK INSURANCE CO.

1. WITNESSES—INSURANCE—FRAUD—MATTERS EQUALLY WITHIN THE KNOWLEDGE OF DECEASED—PRINCIPAL AND AGENT.

   Where defendant insurance corporation issued policies upon three horses owned by plaintiff under separate applications for each animal and shortly thereafter plaintiff observed that one of the stallions was acting peculiarly, whereupon he called a veterinary, who remained with the horse until morning, and where plaintiff about 12 hours after noticing the condition of the horse sent a telegram to the defendant insurer, which was not transmitted, however, until about 4 hours later, also where plaintiff gave testimony tending to show that in making the application for the horse which died he informed defendant's agent, since deceased, about the true facts as to buying the animal and delivering plaintiff's note therefor, the testimony of the agent's brother, who was a clerk in his office, as to whether or not decedent went over the applications with plaintiff before he signed them was not inadmissible on the ground that the testimony was equally within decedent's knowledge.

2. EVIDENCE—CONCLUSIONS—INSURANCE—FRAUDULENT REPRESENTATIONS.

   Where plaintiff claimed that as a part of the deal involving $5,000, of which $2,000 was paid in cash towards the purchase price of three stallions, and that the cash was to be applied upon or was paid for the insured animal which died, his explanation of why the transaction took place in the manner claimed was not open to the objection that it stated a conclusion as to how the money was to be applied.

3. INSURANCE—STOCK INSURANCE—NOTICE—QUESTION FOR JURY.

   It was not erroneous on the part of the trial court to submit to the jury the issue of whether or not plaintiff's notice, sent by telegram to the defendant insurer, complied with the provisions of the policy wherein it was stipulated that the insured should forthwith notify the company if the animal became sick; the term forthwith having the meaning of reasonable celerity or reasonable and proper dili-

gence: what was a reasonable time depended upon the circumstances.

4. SAME—EVIDENCE—INTENT.

Plaintiff was properly allowed by the trial judge to state that he did not intend to perpetrate any fraud upon the insurer in preparing and signing the application, where the court did not leave to the jury the matter of intent but instructed them that if plaintiff truthfully stated the facts and the agent filled out his application and, without reading the same over to the insured, caused him to sign the application without knowing that different facts were stated therein than those given by him to the agent he might recover and was not guilty of fraud.

5. SAME—TRIAL—STRIKING OUT TESTIMONY—EXCEPTIONS—APPEAL AND ERROR.

Defendant's counsel was not entitled to sit by without objection and permit incompetent testimony as to facts equally within the knowledge of defendant's deceased agent to be introduced and afterwards raise the objection by a motion to strike; the objection and exception should appear to have been made at the time the objectionable testimony was offered in evidence.

Error to Gratiot; Searle, J. Submitted June 8, 1915. (Docket No. 18.) Decided July 23, 1915. Rehearing denied December 22, 1915.

Assumpsit by Orla J. Simmons against the National Live Stock Insurance Company upon a policy of insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*McCall Bros.* and *M. S. Meyberg*, for appellant.

*O. G. Tuttle* and *Edwin H. Lyon*, for appellee.

On January 27, 1913, the plaintiff was the owner of three valuable stallions. Desiring to secure insurance upon them, he made application to the defendant company. A separate application was made as to each. horse, and the several applications contained represen-

tations as to the purchase price paid for each horse as follows:

### "Gascon.

"Q. Was purchase price cash, trade, or both? If part trade, state what it consisted of. Ans. Purchase part trade and part cash, $2,250. Q. Cash paid for animal? Ans. $750. Q. Is purchase money all paid? Ans. Yes. Q. If not, for what sum, to whom, and when due? (Not answered.)

### "Egypt.

"Q. Was purchase price cash, trade, or both? If part trade, state what it consisted of. Ans. Cash. Q. What amount did you pay in cash for the animal? Ans. $2,000. Q. Is purchase money all paid? Ans. Yes. Q. If not, for what sum, to whom, and when due? (Not answered.)

### "Hursus.

"Q. Was purchase price cash, trade, or both? If part trade, state what it consisted of. Ans. Cash. Q. Cash paid for animal? Ans. $2,000. Q. Is purchase money all paid? Ans. Yes. Q. If not, for what sum, to whom, and when due? (Not answered.)"

The defendant company issued three separate policies, one upon each stallion, on the 29th day of January, 1913, for the premiums upon which plaintiff paid the sum of $290.

On November 28, 1913, at about 8:30 o'clock in the evening, the plaintiff noticed that the horse Gascon was acting in a peculiar manner. He watched him for a short time, when the horse started to eat, and plaintiff left him. Returning in about an hour, the horse was standing with his head down, acting "kind of funny." Plaintiff immediately called a reputable and experienced veterinary surgeon, who gave the horse some medicine and stayed with it about an hour, when it appeared to him to be all right. He instructed the plaintiff to stay with the horse and call him if it be-

came worse. Its condition at or about midnight on the 28th caused the plaintiff to again call the veterinary, who responded at once, and the horse was removed to the stable of the veterinary surgeon, who worked with it all that night, treating it for indigestion and impaction. About 4 o'clock in the morning a second veterinary was called by telephone from a neighboring town, and both surgeons continued to work over the animal. At about 8:30 a. m. plaintiff filed for transmission a telegram to defendant company notifying it of the illness of the animal. The telegram was not actually sent, however, until 11:52 a. m., and was not received at Indianapolis, the home city of the defendant company, until after 1 p. m. that day. As soon as defendant company received notice of the condition of the horse, it secured the services of a third veterinary surgeon, who arrived at about 6 o'clock in the evening of the 29th. He remained with the horse until it died at 6 o'clock the following morning, the 30th.

Shortly after the death of the horse, plaintiff filed proofs of loss, in which, under oath, he stated that he had paid $2,000 in cash for the horse. Defendant at once denied all liability under its policy, whereupon this suit was brought. The defendant filed a notice under the plea of the general issue, setting up, as matter of special defense, the alleged fact that the plaintiff had falsely and fraudulently represented the cost of the animal insured and the manner of payment therefor. Said notice further sets out that the insurance contract, among other things, provided that:

"The perils indemnified against by this policy do not include death from any cause, where the assured does not render forthwith by telegraph or telephone to the company at its home office, 504 Central Union Telephone Building, Indianapolis, Indiana, notice of any sickness or accident with which any of the animals hereby insured may become afflicted."

The claim is made under said plea and notice that the telegram sent by plaintiff notifying defendant of the illness of the horse Gascon was not a compliance with this provision of the policy. Upon the trial, plaintiff testified, without objection on the part of the defense, to the following facts:

"At the time I made application for insurance on Gascon, I made application for insurance on Hursus and Egypt, and received policies for all three stallions at the same time. I paid $290 to A. E. Barstow, agent of the company, for it as premium on said policies before I received the policies. Henry Barstow and A. E. Barstow were in the office together at the time. When I paid for these policies, I can't just remember whether I made the check to A. E. Barstow or Henry Barstow, but I think A. E. Barstow. Exhibit 10 is the check by which I paid A. E. Barstow $290 premium. I delivered it to him at the time I got the policies I received February 13th. Mr. A. E. Barstow drew one and part of another of the applications and was taken sick and Henry drew the rest of them.

"Q. Did you read them?
"A. I didn't.
"Q. Or were they read to you?
"A. No, they were not.
"Q. You didn't read them you say?
"A. I didn't."

These facts were equally within the knowledge of A. E. Barstow, the agent of the defendant company, who wrote the insurance, and who was dead at the time of the trial. A motion having been made to strike out plaintiff's testimony so far as the facts related were equally within the knowledge of the defendant's agent, the court in the first instance granted the motion, but later reinstated the testimony. Plaintiff was permitted to testify, over objection, that, in signing said application, he had no intention of committing a fraud upon the defendant. The case was submitted to the jury upon two grounds:

(1) As to whether the plaintiff was guilty of fraud because of the alleged misstatements contained in the application.

(2) Whether the telegram sent by plaintiff to defendant on the morning of the 29th of November was a compliance with the policy requirement that a notice be sent "forthwith."

Plaintiff had verdict and judgment.

BROOKE, C. J. (*after stating the facts*). There is no doubt that the statement appearing in the application for insurance upon the horse. Gascon, touching the question of the cost of said animal, is not in accordance with the facts. It appears that plaintiff bought three horses, a small piece of real estate, and some other personal property for $5,000. At the time he consummated the deal, he paid $500 down to bind the bargain. One thousand five hundred dollars further was paid at the time the property was delivered to him, and the balance of $3,000 was secured by two promissory notes of $1,500 each, indorsed by his father, falling due some time later. It was, however, claimed by the plaintiff, and his claim is borne out by the testimony of Henry Barstow, who was a brother of A. E. Barstow, the agent of the defendant company, and who for many years had been associated with his brother as clerk in the latter's office, that he truthfully disclosed the facts attending the purchase. This witness testified explicitly to the fact that the plaintiff had told his brother, the agent of the defendant company, that he paid $2,000 for the horse Gascon, $1,500 for the horse Egypt, and $1,200 for the horse Hursus; that he had paid $2,000 in cash, and had given notes indorsed by his father for $3,000, the balance of the purchase price. An objection was made to the testimony of this witness upon the ground that the facts related in his testimony were equally within the knowledge of A. E. Barstow, defendant's agent, and for the reason that no foundation was laid for the testimony,

and it was therefore incompetent. The objection was overruled, the testimony taken, and error is assigned thereon. We are of opinion that the ruling was correct. Henry Barstow was a clerk in his brother's office. He was present probably all of the time, but certainly a large part of the time while the applications were being prepared by his brother. His brother was taken ill and left the office in the course of the transaction, and Henry Barstow completed the filling out of the applications. It certainly cannot be said that in so doing he acted as agent for the plaintiff. We are of opinion that his relation to the business in hand was practically that of his employer, who certainly would have been a competent witness to testify to the facts elicited from his clerk.

Error is assigned upon the ruling of the court permitting the plaintiff to disclose the details of his bargain with Mrs. Clark at the time he purchased the horses. It was his claim that the $2,000 cash paid at the time of the purchase was paid for the horse Gascon, for the reason that Mrs. Clark claimed that a note was still outstanding on said horse, and that it was necessary for her to have the cash to pay for that horse and some other obligations. It is urged on behalf of the defendant that this testimony should have been excluded, because it was the conclusion of the witness as to how the money paid was applied, and as to the details of the transaction. We do not think the testimony open to this objection. It was a narration of alleged facts and not in any sense an assertion of the conclusions of the witness.

It is next urged that the court erred in submitting the question of the sufficiency of the notice to the jury. Many authorities are cited upon this point by defendant's counsel, among them the following: *Illinois Live Stock Ins. Co.* v. *Kirkpatrick*, 61 Ill. App. 74; *Green Brothers* v. *Insurance Co.*, 87 Iowa, 358 (54 N. W.

349) ; *Alston* v. *Insurance Co.*, 7 Kan. App. 179 (53 Pac. 784) ; *Johnston* v. *Insurance Co.*, 107 Wis. 337 (83 N. W. 641) ; *Swain* v. *Insurance Co.*, 165 Mass. 321 (43 N. E. 105). Without determining whether the question should have been submitted to the jury (*Griffey* v. *Insurance Co.*, 100 N. Y. 417 [3 N. E. 309, 53 Am. Rep. 202] ; *Carpenter* v. *Insurance Co.*, 135 N. Y. 298 [31 N. E. 1015] ; *McNally* v. *Insurance Co.*, 137 N. Y. 389 [33 N. E. 475] ; *Harnden* v. *Insurance Co.*, 164 Mass. 382 [41 N. E. 658, 49 Am. St. Rep. 467]) or passed upon by the court, we are of opinion that the defendant was not injured by such submission. Under the circumstances surrounding this case, as disclosed by the record, we think that the sending of the telegram at 8:30 in the morning was a reasonable compliance with the "forthwith" requirement of the policy. We had occasion to consider the legal meaning of the term "forthwith" in the case of *Walker* v. *City of Detroit*, 138 Mich. 538 (101 N. W. 809). We there said:

"The term 'forthwith' does not in all cases mean 'instanter,' but may and often does have a relative meaning, and may mean 'all reasonable celerity,' or 'all reasonable dispatch,' 'with reasonable and proper diligence.' 13 Am. & Eng. Enc. Law (2d Ed.), p. 1157 *et seq.* And what is a reasonable time depends on the circumstances of each case. *Anderson* v. *Goff*, 72 Cal. 73 [13 Pac. 73, 1 Am. St. Rep. 34]."

The horse fell seriously ill about 10:30 p. m. From that time on during the night the plaintiff, part of the time with one veterinary surgeon and part with two, worked over him in a fruitless endeavor to save his life. He testified that he filed his telegram about 8:30 a. m. It was not actually transmitted until nearly 12 o'clock. This delay in transmission was apparently in no sense due to the negligence of the plaintiff. It should perhaps be noted that, while the policy requires

"forthwith" notice by telephone or telegraph, the application signed by the plaintiff contains the agreement of warranty that he will send such notice "forthwith by registered mail or telegraph." The policy makes the application a part of the contract, and the plaintiff would clearly have acted within his legal rights had he sent the notice by registered mail instead of telegram, in which event it would not have reached the plaintiff until a much later hour than the telegram, in fact, did. We think that the court might, with entire propriety, have withdrawn the question from the consideration of the jury and himself determined, as a matter of law, that the notice as sent was a reasonable compliance with the policy requirement.

Error is assigned upon the ruling of the court in permitting the plaintiff to testify that, in signing the application, he had no intention of committing fraud. The assignment is without merit, for the reason that the court, in submitting the question of fraud to the jury, instructed them:

"But I also charge you that in that respect it is the law in this State that if a party truthfully states the facts to the agent who fills out the answers to the questions upon the application, and the party securing the insurance does not read over the application and does not have it read over to him, so that he has no reason to believe or know that the application is not exactly like the answers that he has made, then he may recover and is not guilty of fraud, even though the agent places different figures or different statements or answers to the questions than the party gave."

It is therefore apparent that the question of intent was not submitted to the jury. We think this portion of the charge, which is the subject of an exception, is warranted under the following authorities: *Michigan State Ins. Co.* v. *Lewis,* 30 Mich. 41; *Temmink* v. *Insurance Co.,* 72 Mich. 388 (40 N. W. 469); *Van Houten* v. *Insurance Co.,* 110 Mich. 682 (68 N. W. 982);

*Perry* v. *Insurance Co.*, 147 Mich. 645 (111 N. W. 195);
*Clark* v. *North American Union*, 179 Mich. 131 (146
N. W. 336).

The refusal of the court to strike out that portion
of the testimony of the plaintiff relating to facts
equally within the knowledge of defendant's agent was
correct. The testimony came in without objection or
exception. Counsel cannot sit by and permit incompetent testimony to be introduced without objection and
afterwards, when it is found to be unsatisfactory, have
it stricken from the record. *Berryman* v. *Graham*, 21
N. J. Eq. 370; *Quin* v. *Lloyd*, 41 N. Y. 349; *Barbier* v.
*Young*, 115 Mich. 100 (72 N. W. 1096). Other assignments of error, in our opinion, do not require consideration.

The judgment is affirmed.

KUHN, STONE, OSTRANDER, BIRD, MOORE, and
STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.