NATIONAL LIVE STOCK INSURANCE COMPANY *v.*
BARTLOW.

[No. 8,658.   Filed November 23, 1915.]

1.   INSURANCE.—*Live Stock Insurance.—Construction of Contract.—
Notice of Sickness.*—The provision of a policy of live stock insurance
that the company would not be liable for loss occurring by the death
of the animal from sickness if the assured failed to render at once
notice to the secretary of the company of such sickness, should be
reasonably construed so as not to require notice of a mere tem-
porary and inconsequential indisposition bearing no relation to the
prospective health or continued existence of the animal, and as
not to require notice simultaneous with the manifestation of the
physical disorder, and regardless of attending circumstances.
p. 237.

2.   INSURANCE.—*Live Stock Insurance.—"Sickness".—"Illness".*—
The terms "sickness" and "illness" are practically synonymous and
may include a physical disorder of a less serious character than a dis-
ease, but as used in insurance contracts they denote a disease or
ailment of such character as to affect the general soundness and
health of the system of the subject involved, and not a mere tem-
porary indisposition which does not tend to undermine and weaken
the constitution.   p. 237.

3.   INSURANCE.—*Live Stock Insurance.—Notice of Sickness.—Duty of
Assured.—"At Once".*—While a stricter rule of construction is to be
enforced against assured under a policy of live stock insurance call-
ing for notice to the company at once of the sickness of the animal,
than is applied in cases requiring information of a past illness, such
a policy does not necessitate instantaneous action on the part of
the assured, but requires that he act from the viewpoint of the rea-
sonably possible termination of the illness involved, the require-
ment for notice "at once" meaning that notice shall be given
within such time as is reasonable in view of the circumstances.
p. 238.

4.   INSURANCE.—*Live Stock Insurance.—Notice of Sickness.—Lia-
bility.*—A policy of live stock insurance providing that the com-
pany should not be liable in case of the death of the animal from
sickness if the assured failed to render at once notice to the secre-
tary of the company of such sickness, though perhaps not requir-
ing it in all cases, plainly contemplated that notice be given be-
fore the decease of the animal, and the assured could not recover
in an action thereon where the animal insured became sick in the
evening of one day and died in the morning of the second day fol-
lowing, and the assured, though having opportunity to do so,
failed to notify the company of such sickness.   p. 238.

From Pike Circuit Court; *John L. Bretz*, Judge.

Action by Claude Bartlow against the National Live Stock Insurance Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Mitchel S. Meyberg*, for appellant.
*Edward P. Richardson* and *Arthur H. Taylor*, for appellee.

CALDWELL, J.—Appellant, an Indiana corporation, in consideration of a premium of $10, paid in advance, and the warranties, conditions and agreements contained in the application and policy, issued to appellee a policy of insurance, by which appellee was insured against loss to the amount of $200 that he might otherwise incur through the death or theft of two horses, designated as "Tom" and "Bill". Half the insurance was placed on each of the animals. The term of insurance was twelve months expiring September 15, 1912, at noon. Tom having died September 13, 1912, appellee brought this action on the policy to recover for the loss.

The policy contained the following provision:

"This company will not be liable for losses occurring through neglect or carelessness of the assured   *   *   *   nor if the assured, in case of sickness or accident to the animal or animals hereby insured shall fail to render at once notice to the secretary of the company of such sickness or accident, together with the name and address of the veterinary employed.   *   *   * And it is hereby understood and agreed by and between this company and the assured that this policy is made and accepted in reference to the foregoing terms and conditions, which are hereby declared to be a part of this contract, and are to be used and resorted to in order to determine the rights and obligations of the parties hereto."

Appellant in addition to a general denial answered specially, to the effect that the horse Tom, in May, 1912, became sick with kidney trouble; that it thereafter seemed to recover, but that there was a return of such disorder September 12, 1912, and continuing sick, it died from such disease September 13, 1912; that neither appellant nor its secretary had any knowledge of such sickness until long after the death of the animal; that appellee could have given notice of such sickness as required by the policy, but that he did not do so.

A trial by the court resulted in a judgment for appellee in the sum of $102.40. On this appeal appellant presents the single question of the sufficiency of the evidence. The weight of the evidence would seem to indicate that the May sickness was kidney trouble, but there was other evidence to uphold a finding that it was trivial in its nature and harmless in character. In any event that sickness was apparently of but two or three hours duration, and from it the horse seemed to recover rapidly and fully. On the evening of September 11, 1912, appellee discovered that the horse was again sick. This sickness continued, resulting in the death of the animal on the forenoon of the thirteenth. A veterinary was called the morning of the twelfth. The malady was kidney trouble. One-fourth mile from appellee's residence was a telephone, and also a postoffice box from which letters could be mailed. At Petersburg, four miles distant, was a telegraph office. In no manner prior to the death of the animal did appellee notify or attempt to notify appellant or its secretary of the sickness. No excuse is given for such failure. Appellant's agent who solicited the insurance, and who delivered the policy after appellant had issued it, lived and maintained an office at Petersburg. On the evening of the thirteenth, ap-

pellee went to Petersburg, for the purpose of informing appellant's agent that the horse had died. The agent being out of town appellee returned to his home without seeing him. On the fifteenth, which was Sunday, he returned to Petersburg, saw the agent, informed him that one of the insured animals was dead, and requested him to notify the company. The agent informed appellee that it was his duty to give notice of loss, and presented him a sheet of paper and an envelope to be used for that purpose. On September 16, appellee, at Vincennes, mailed such notice to appellant. On receipt of the notice, appellant forwarded to its agent at Petersburg blanks to be used in making proof of loss, and under date of October 8, proof was made out, signed by appellee, and forwarded to appellant. The proof of loss disclosed the facts substantially as herein set out respecting the sickness and death of the horse, and also that it had had some sickness from kidney trouble in May, whereupon by letter appellant denied liability.

As we have indicated, the policy contained express provision to the effect that the company would not be liable for loss occurring by the death of an insured animal if such animal became sick and the assured failed to render at once notice to the secretary of the company of such sickness. Dismissing from consideration a case of sickness from which there is a recovery, as the May sickness here, and directing our attention to sickness terminating fatally, as the September sickness here, the provisions of the policy are plain and unambiguous that notice of sickness is a condition precedent to the attaching of liability for a loss resulting from the death of the insured animal caused by such sickness. It can not be contended that appellant waived the required notice, or that it is estopped

from availing itself of the want of notice, for the reason that; under the evidence, appellant, after receiving knowledge of the circumstances preceding and attending the death of the animal promptly denied liability, and neither required nor received anything further from appellee.

The language of the policy literally interpreted would require notice in case of sickness, however trivial, and that such notice be given by instantaneous action. The language, however, should receive a reasonable interpretation. It should not be construed to require such notice in the case of mere temporary indisposition, plainly and apparently inconsequential in nature, and bearing no relation to the prospective health or continued existence of the animal. Nor should it be so interpreted as to require notice simultaneous with the manifestation of the physical disorder, and regardless of attending circumstances.

2. Thus, it is held that a physical ailment may be of such a trivial nature as not to amount to a sickness or disease as those terms are used in an application for an insurance policy. *Manhattan Life Ins. Co.* v. *Francisco* (1873), 17 Wall. 672, 21 L. Ed. 698. It is held also that the term "illness" which is practically synonymous with the term "sickness" may include a physical disorder of a less serious character than a disease. *Connecticut Mut. Life Ins. Co.* v. *Union Trust Co.* (1884), 112 U. S. 250, 5 Sup. Ct. 119, 28 L. Ed. 708. The former term has been defined by this court as a disease or ailment of such a character as to affect the general soundness and health of the system of the subject involved, and not a mere temporary indisposition which does not tend to undermine and weaken the constitution. *Prudential Life Ins. Co.* v. *Sellers* (1913), 54 Ind. App. 326, 102 N. E. 894. See, also,

*Billings* v. *Metropolitan Life Ins. Co.* (1898), 70 Vt. 477, 41 Atl. 516; *Modern Woodmen, etc.* v. *Miles* (1912), 178 Ind. 105, 97 N. E. 1009.

In each case cited the terms "illness" and "sickness" were under consideration as used in applications for insurance policies, and after the decease of the insured. The assured there in making his application, in each case was viewing a past physical indisposition retrospectively and after its severity and results were fully known. Here the assured, respecting any particular sickness of the animal and his duty to give notice, was required to act from the standpoint of the prospective and before he could know the course or termination of the sickness, and it would therefore seem that a stricter rule of construction should be indulged against him than in the cases cited. He should be required to act from the viewpoint of the reasonably possible termination of the illness involved. In contracts of various kinds, the phrase "at once" is construed as synonymous with "immediately", "forthwith", etc., where the subject-matter is the giving of notice. It is held that the use of such a term does not ordinarily call for instantaneous action, but rather that notice shall be given within such time as is reasonable in view of the circumstances. *Cohen* v. *Silverman* (1896), 4 App. Div. 503, 40 N. Y. Supp. 8; *Bennett* v. *Lyconing, etc., Ins. Co.* (1876), 67 N. Y. 274; *Warder, etc., Co.* v. *Horne* (1900), 110 Iowa 285, 84 N. W. 591; 1 C. J. 474.

In determining the question of reasonable time here, we can not lose sight of the fact that the policy, while it may not require it in all cases, plainly contemplates that notice of sickness should be given before the decease of the animal. In some cases, however, death might follow so rapidly

on the footsteps of the sickness as that prior notice of the sickness would not be reasonably possible. With these preliminary observations, we proceed to determine whether notice of the sickness here was necessary as a condition to liability. In *Alston* v. *Northwestern Live Stock Ins. Co.* (1898), 7 Kan. App. 179, 53 Pac. 784, the policy provided that in case of sickness of the animal insured, notice by telegram should be given at once, otherwise that the policy should be void. The animal after being sick for six days died. No notice of the sickness was given. The court in holding that there was no liability, said: "There is no question but that, under the terms of this clause of the policy, it is the duty of the plaintiff in any event to notify the company of the sickness of the animal. It is expressly provided that in case of a failure to do so the policy should become void absolutely. There is no room for construction or interpretation. The provision is clear and emphatic." In *Swain* v. *Security Live Stock Ins. Co.* (1896), 165 Mass. 321, 43 N. E. 105, the policy provided that in case the insured animal became sick, the owner should notify the company within fifteen hours. The animal became sick and lived twenty hours, after it was known to be sick, but notice was not given until after its death. Held that there could be no recovery. In *Green Bros.* v. *Northwestern Live Stock Ins. Co.* (1893), 87 Iowa 358, 54 N. W. 349, the insured horse was taken sick with pinkeye. For several days it plainly manifested the symptoms of the disease, and then died. Notice required by the policy was not given. Held there was no liability. The following quotation indicates the facts and likewise the decision in *Johnston* v. *Northwestern Live Stock Ins. Co.* (1900), 107 Wis. 337, 83 N. W. 641: "The policy provides that, in case of sickness of the horse, the insured

'shall *at once* notify the company by telegram of the fact of such sickness; * * * otherwise, this policy shall be void'. * * * The fact was without dispute that the horse was found to be sick in the morning of Sunday, November 5, 1893, and died in the afternoon of the same day, and that no telegram notifying the company of the fact was ever sent. * * * The agreement was absolute to telegraph to the company at once; not to use ordinary care or reasonable diligence to do so. * * * This was an agreement in the nature of a promissory warranty, and if not strictly fulfilled there could be no recovery. Certainly, nothing short of impossibility of fulfillment could excuse a breach, nor does it avail to say that its fulfillment would have done no good in this case. The parties chose to make it an absolute essential to the validity of the contract upon which the right of recovery depends. In effect, it is a promissory warranty, and the question as to its materiality or usefulness is not open." See, also, note to *Joplin* v. *National Live Stock Ins. Co.* (1912), 44 L. R. A. (N. S.) 569, where the case above cited and others are digested.

In our judgment, however, the phrase "at once" as used in the policy should be construed as hereinbefore indicated, rather than as in the Johnston case, *supra*; that is, that such phrase calls for reasonable promptness of action, rather than instantaneous action. In determining what action is reasonable, regard should be had to the provisions of the policy, the symptoms manifested by the sick animal, and the surrounding circumstances. See *Pacific Mut. Life Ins. Co.* v. *Branham* (1904), 34 Ind. App. 243, 70 N. E. 174. The facts here are before the court and are undisputed. No notice of the sickness was given or attempted to be given. The failure to do so is unexplained. Under the

facts here presented, we hold that the loss occasioned by the death of the horse is not brought within those insured against by the provisions of the policy. The judgment is reversed with instructions to sustain the motion for a new trial.

Note.—Reported in 110 N. E. 224. As to deterioration in value of animals, see 36 Am. St. 831. For a general discussion of animal insurance, see Ann. Cas. 1915 A 614. See, also, under (1, 4) 25 Cyc 1519; (3) 25 Cyc 1916 Anno. 1519.